## PEOPLE *v.* YOUNG

1. CRIMINAL LAW—IDENTIFICATION—LINEUP—CONSTITUTIONAL LAW —DUE PROCESS.

    An accused has a constitutional right to have a lineup not unnecessarily suggestive in nature when viewed within the totality of the circumstances surrounding such a confrontation and this right exists as an element of due process regardless of whether his lawyer is present at that lineup or that lineup took place before June 12, 1967 when the United States Supreme Court held that an accused is entitled to have counsel present during an identification lineup.

2. CRIMINAL LAW—IDENTIFICATION—LINEUP—TESTIMONY.

    The taint of a prejudicial lineup is not removed by the fact that there is no testimony at trial regarding a prior identification.

3. CRIMINAL LAW—IDENTIFICATION—FAIRNESS—LINEUP—SEPARATE HEARING.

    Identification testimony of those participating in a lineup process should not be admitted in evidence, when the issue of fairness of a pretrial lineup is timely raised, until a determination is made at a separate evidentiary hearing that the lineup was held in a manner consistent with the requirements of due process, or that the in-court identification would be free of taint and would have an independent origin.

4. CRIMINAL LAW—CONFESSION—VOLUNTARINESS—SEPARATE HEARING.

    A separate evidentiary hearing is required to determine the voluntariness of a confession.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5, 6, 8–10]  21 Am Jur 2d, Criminal Law § 313.
[4]  29 Am Jur 2d, Evidence § 582 *et seq.*
[7]  29 Am Jur 2d, Evidence §§ 588, 589.
[11]  53 Am Jur, Trial § 824 *et seq.*

5. CRIMINAL LAW—LINEUP—CONSTITUTIONAL LAW—DUE PROCESS.
   A claimed violation of due process of law in the conduct of a confrontation at a lineup depends on the totality of the circumstances surrounding it.

6. CRIMINAL LAW—IDENTIFICATION—EVIDENCE—LINEUP—PRODUCTS —ADMISSIBILITY.
   All products of an unnecessarily suggestive confrontation are inadmissible at trial, but the prosecutor is to be given the opportunity to establish by clear and convincing evidence that in-court identifications are based upon observations of the suspect other than the confrontation identification.

7. CRIMINAL LAW—CONFESSION—VOLUNTARINESS—BURDEN OF PROOF.
   The burden of proof is on the prosecutor where a defendant challenges the voluntariness of his confession.

8. CRIMINAL LAW—IDENTIFICATION—LINEUP—FAIRNESS—BURDEN OF PROOF.
   The prosecution has the burden of proof to show fairness of identifications made at a confrontation or lineup out of the presence of defendant's attorney.

9. CRIMINAL LAW—IDENTIFICATION—LINEUP—COUNSEL—DUTY.
   Defense counsel present at a confrontation has a clear duty to observe and note the events and to learn, if possible, the identity of those present at that confrontation.

10. CRIMINAL LAW—IDENTIFICATION—LINEUP—COUNSEL—BURDEN OF PROOF.
    The burden of proof is on a defendant to allege and factually support a claim that a confrontation for identification was unnecessarily suggestive, if his counsel was present.

11. APPEAL AND ERROR—JURY—INSTRUCTIONS—WAIVER.
    Failure to timely object to jury instructions waives such issues on appeal (GCR 1963, 516.2).

Appeal from Wayne, James L. Ryan, J. Submitted Division 1 December 12, 1969, at Detroit. (Docket No. 7,038.) Decided February 6, 1970.

Donnie C. Young was convicted by a jury of assault with intent to rob and steal being armed. Defendant appeals. Remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Robert H. Golden,* for defendant on appeal.

Before: LESINSKI, C. J., and LEVIN and DANHOF, JJ.

LESINSKI, C. J.  Defendant Donnie C. Young was convicted after a jury trial of assault with intent to rob and steal being armed, MCLA § 750.89 (Stat Ann 1962 Rev § 28.284).  From this conviction defendant appeals as of right.

On May 16, 1967, two men entered a motel in the city of Inkster at approximately 11 p.m.  After some conversation with the clerk on duty, who was the wife of the proprietor, they produced weapons and announced that it was a holdup.  Upon hearing the commotion the owner came into the front office from the adjoining living quarters, whereupon he too was held at bay.  In an effort to find more money, one of the holdup men took the owner back into the living quarters and the wife followed.  After a scuffle with the owner, the thief said "let's get the hell out of here", ran back to the front office where the other waited, scooped some money from the cash register, and the two men ran out.  The owner followed them out and waved down a passing police car.  The police apprehended defendant and Ronald Carter almost immediately thereafter and placed them under arrest.  A cap pistol was confiscated from Young and a .22-caliber revolver from Carter.  A search of Young at the police station produced $48 in currency and $12.55 in change.

At trial Young testified on his own behalf. During the course of direct examination he admitted being at the motel on the evening of the holdup. It was his contention, however, that he was suffering from a bad hangover, resulting from an afternoon in a bar, and that he was sleepy, due to his having taken some pills known as Seconals or "reds." Under this condition, Young claimed that he was not fully aware of what was going on and that if a holdup took place he was not a knowing participant. Although he admitted handling the cap pistol in the motel and in the presence of the victims, he testified that Carter had first held it, then handed it to Young, who tried to hand it back, but kept it when Carter refused to retake it. Young stated that Carter took the owner into an adjoining room and that the owner's wife followed when Young put the cap pistol into his pocket. There was a tussling noise in the other room, Carter reappeared saying "let's get the hell out of here", and they left.

During the day following the holdup Young and Carter were presented to the witnesses in a lineup. The circumstances and result of the lineup are not presented in the record.

At trial, prior to the selection of the jury, defendant moved to suppress any testimony relating to the identification at the lineup until a separate preliminary hearing on the fairness of the lineup could be held. The motion was taken under advisement. Immediately prior to the prosecution's calling of the desk clerk, the defendant again objected, arguing that a procedure similar to a *"Walker* hearing"[1] should be held to determine "whether there was a denial of due process in its [the lineup's] composition and in its conduct." Again the motion was taken under advisement. When the witness tes-

---

[1] *People* v. *Walker* (On rehearing, 1965), 374 Mich 331.

tified that she recognized the defendant as one of the holdup men, defendant objected for a third time. The court overruled the objection.

The first issue raised on appeal is whether defendant was denied due process by the trial court's refusal to hold a separate preliminary evidentiary hearing.

Initially we note that the issue was properly preserved for appeal by defendant's timely motion. *People v. Childers* (1969), 20 Mich App 639. We therefore turn to the merits.

It is argued by the people that the question is controlled by *People v. Barrow* (1969), 17 Mich App 624. There we held that *United States v. Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149), which held that accused persons have the right to counsel at lineups, was not retroactive. The lineup in the instant case occurred May 17, 1967, several weeks prior to the effective date of *Wade,* June 12, 1967.

This argument, however, overlooks a fundamental distinction. The *Wade* decision established an exclusionary rule for identifications made during confrontations at which defendant was denied his right to counsel. Independent of the right to counsel, however, is the right to have a lineup not unnecessarily suggestive in nature when viewed within "the totality of the circumstances surrounding" the confrontation. *Stovall v. Denno* (1967), 388 US 293, 302 (87 S Ct 1967, 1972, 18 L Ed 2d 1199, 1206). Thus, whether or not a lawyer is present and whether or not the lineup took place before *Wade,* the right exists as an element of due process.

The distinction was clearly noted in *Stovall v. Denno, supra,* where the Court noted at pp 301, 302:

"We turn now to the question whether petitioner, although not entitled to the application of *Wade*

and *Gilbert* to his case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. *This is a recognized ground of attack upon a conviction independent of any right to counsel claim. Palmer* v. *Peyton* (CA 4, 1966), 359 F2d 199." (Emphasis supplied.)

Even prior to *Wade* this distinction was set forth in *Palmer* v. *Peyton* (CA 4, 1966), 359 F2d 199. There the court noted by way of footnote at p 202:

"At the reargument of this case, we requested discussion of the possible effect of the fact that Palmer was without counsel at the identification, in light of *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977). *Cf. United States, ex rel. Stovall* v. *Denno* (CA 2, 1966), 355 F2d 731. We do not reach *Escobedo* problems, however, since we conclude that the entire atmosphere surrounding the identification was a violation of due process."[2]

In the course of the witness's testimony, no mention was made of the pretrial lineup. The fact that the witness did not testify regarding the prior identification does not in any way remove the taint of a prejudicial lineup if such a taint in fact exists.

Finally, the point is raised that since defendant has testified that he was present at the motel, any possible dispute as to whether the identification is correct is foreclosed. We disagree.[3]

---

[2] See, also, *Foster* v. *California* (1969), 394 US 440 (89 S Ct 1127, 22 L Ed 2d 402); *United States ex rel. Rutherford* v. *Deegan* (CA 2, 1969), 406 F2d 217; *People* v. *Blumenshine* (1969), 42 Ill 2d 508 (250 NE2d 152); *People* v. *Conley* (1949), 275 App Div 743 (87 NYS2d 745); and *People* v. *Gerace* (1938), 254 App Div 135 (5 NYS2d 29).

[3] A similar argument was raised by the prosecutor in *People* v. *Wright* (1967), 6 Mich App 495. There this Court stated beginning at p 502.

"The prosecution further argues that the voluntariness issue is now academic since defendant took the stand and testified in open

The record in the instant case is absolutely devoid of any indication of what events occurred at the lineup. We are unable to say on the basis of such a record that the lineup was not conducted in an unnecessarily suggestive manner. We are also unable to say that but for the lineup the witnesses would have been able to identify defendant at trial. Moreover, but for the identification at trial, defendant's testimony might not be on the record.

When the fairness of a pretrial lineup is timely raised, identification testimony of those participating in the lineup process should not be admitted in evidence until a separate determination is made that the lineup was held in a manner consistent with the requirements of due process, or that the in-court identification would be free of taint and would have an independent origin.

---

court that he shot Officer Bergum. This argument is spurious for two reasons. *First, it unjustifiably assumes that the confession entered into evidence had no effect upon defendant's taking the witness stand.* It is more than idle speculation to conclude from this record that the confession's admission placed the defendant in a position of being compelled to take the stand to explain *why* he had shot the officer. Secondly, the prosecution's argument assumes that the admission of confessions involuntarily rendered would not require reversal when there is separate and sufficient incriminating evidence to sustain a conviction. In this regard the United States Supreme Court stated in *Jackson* v. *Denno, supra,* at p 376:

" 'It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, *Rogers* v. *Richmond* (1961), 365 US 534 (81 S Ct 735, 5 L Ed 2d 760), and even though there is ample evidence aside from the confession to support the conviction. *Malinski* v. *New York* (1945), 325 US 401 (65 S Ct 781, 89 L Ed 1029); *Stroble* v. *California* (1952), 343 US 181 (72 S Ct 599, 96 L Ed 872); *Payne* v. *Arkansas* (1958), 356 US 560 (78 S Ct 844, 2 L Ed 2d 975).' " (Emphasis supplied.)

See, also, 1 Gillespie, Michigan Criminal Law & Procedure (2d ed, 1969 Cum Supp) § 527, p 120, where it is noted:

"The issue of the voluntariness of the defendant's confession is not rendered moot by his taking the stand and testifying inculpatively at trial, since the introduction of the confession may have obliged him to testify defensively, and since the use in evidence of the involuntary confession requires reversal notwithstanding that there is sufficient evidence to convict aside from the confession."

We are not satisfied beyond a reasonable doubt that the lineup did not contribute to defendant's conviction. *Chapman* v. *California* (1967), 386 US 18 (87 S Ct 824, 17 L Ed 2d 704); *People* v. *Teal* (1969), 20 Mich App 176.

In *People* v. *Walker* (1965), 374 Mich 331, the Court held that a separate evidentiary hearing was required to determine the voluntariness of a confession. The decision was in direct response to the United States Supreme Court's opinion in *Jackson* v. *Denno* (1964), 378 US 368 (84 S Ct 1774, 12 L Ed 2d 908, 1 ALR3d 1205). The basis for the rule set forth in *Jackson* was twofolded. At p 379 the Court noted that when a jury returns a general verdict of guilty:

"It is impossible to discover whether the jury found the confession voluntary and relied upon it, or involuntary and supposedly ignored it. Nor is there any indication of how the jury resolved disputes in the evidence concerning the critical facts underlying the coercion issue. Indeed, there is nothing to show that these matters were resolved at all, one way or the other."

The second difficulty with having the jury resolve the issue was set forth earlier in *Stein* v. *New York* (1953), 346 US 156, 177 (73 S Ct 1077, 1089, 97 L Ed 1522, 1539), and cited in *Jackson* at p 380:

"Perhaps a more serious, practical cause of dissatisfaction is the absence of any assurance that the confessions did not serve as makeweights in a compromise verdict, some jurors accepting the confessions to overcome lingering doubt of guilt, others rejecting them but finding their doubts satisfied by other evidence, and yet others or perhaps all never reaching a separate and definite conclusion as to the confessions but returning an unanalytical and impressionistic verdict based on all they had heard."

The same reasoning applies to pretrial confrontations. When a general verdict of guilty is returned, it is impossible to determine how a jury resolves the issue of the fairness and possible taint of a lineup or whether they resolve it at all. Further, a jury may use a pretrial identification as a makeweight to resolve doubt against a defendant despite its possibly being the result of unnecessarily suggestive circumstances.

We, therefore, remand for an evidentiary hearing out of the presence of the jury to determine whether the pretrial confrontation was "unnecessarily suggestive" and whether defendant was thereby denied due process of law. See, also, *Stovall* v. *Denno, supra,* and *People* v. *Childers, supra.* As noted in *Stovall* at p 302, "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it." This standard is to be followed on remand.

Should it be concluded that the lineup was unnecessarily suggestive, all products of the confrontation are inadmissible. However, the prosecutor is to be given "the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *United States* v. *Wade, supra,* at p 240.

On remand the question of who has the burden of proof will arise. This is especially relevant in the instant case as defendant has failed to allege any facts to support his general challenge to the fairness of the confrontation.

Of the few cases on point, *People* v. *Blumenshine* (1969), 42 Ill2d 508 (250 NE2d 152, 154), held that a defendant claiming a denial of due process "must prove that 'the confrontation conducted * * * was so unnecessarily suggestive and conducive to

irreparable mistaken identification that he was denied due process of law.' " No reasons were given to support the conclusion that the burden should always be on defendant.

There is a major difficulty, however, with putting such a burden on the defendant in all cases. In many types of confrontations the defendant will be totally unaware of the fact that witnesses are trying to identify him.[4] When this happens it may well be impossible for defendant to know who was present at the confrontation, what was said or what facts existed which might make it "unnecessarily suggestive". The same is also true even where defendant knows he is being put in a lineup.

Putting the burden of proof on defendant in these situations may well result in denying him procedurally a right which is purportedly granted substantively. In the area of constitutionally guaranteed rights (here due process) such a result is not favored.

Moreover, in the analogous case where defendant challenges the voluntariness of his confession, it has long been the law that the burden is on the prosecutor. As noted in *People* v. *Boyce* (1946), 314 Mich 608, 612, 613: "It was incumbent on the prosecution to prove that the confessions were voluntary."

We conclude, therefore, that for identifications made at a confrontation out of the presence of defendant's attorney, the burden is on the prosecution to show fairness.

A distinguishable situation appears to exist, however, where defendant has counsel present at the confrontation. For if counsel is present it is clearly his duty to observe and note the events and to learn, if possible, the identity of those present. Where

---

[4] Some obvious examples are the use of one-way mirrors to observe defendant while he is being interviewed by a police officer and the use of photographs.

counsel is present, it would be up to defendant to allege and factually support a claim that the confrontation was unnecessarily suggestive.

Defendant also questions the jury instructions given by the court below on several grounds. No objections were raised below although given specific opportunity by the trial court. Failure of timely objection waives such issues. *People* v. *Allar* (1969), 19 Mich App 675; *People* v. *Mallory* (1966), 2 Mich App 359; GCR 1963, 516.2.

Remanded for actions not inconsistent with this opinion.

All concurred.