PEOPLE v ROBERSON

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—HARMLESS ERROR—
CONSTITUTIONAL LAW—CONSTITUTIONAL-NONCONSTITUTIONAL DI-
CHOTOMY.

The question of harmless error turns not on the reasons for
inadmissibility but on the effect of the evidence in the context
of a particular case, and there is no necessary connection
between the fact that evidence was unconstitutionally seized
and the degree of harm caused by its admission; therefore,
there is no rational basis for the constitutional-nonconstitu-
tional dichotomy resulting in two standards for testing harm-
less error.

2. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHS—LINEUP—RIGHT
TO COUNSEL.

Both before and after commencement of the judicial phase of a
prosecution a suspect is entitled to be represented by counsel at
a corporeal identification or a photographic identification un-
less the circumstances justify the conduct of an identification
procedure before the suspect can be given an opportunity to
request and obtain counsel, and, except in exigent circum-
stances, photographs of a suspect known to be in custody or
who can readily be produced for a lineup may not be displayed
to witnesses.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—IDEN-
TIFICATION—PHOTOGRAPHS—HARMLESS ERROR.

The right to counsel guaranteed by the Sixth Amendment does
not extend to photographic displays; therefore, the denial of a
defendant's right to counsel at a photographic display is not
error of constitutional magnitude (US Const, Am VI).

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 8] 5 Am Jur 2d, Appeal and Error § 776 *et seq.*
[2–7] 21 Am Jur 2d, Criminal Law §§ 313, 314.
Accused's right to counsel under the Federal Constitution—Su-
preme Court cases. 9 L Ed 2d 1260.
[3–7] 21 Am Jur 2d, Criminal Law §§ 368, 369.

4. CRIMINAL LAW—RIGHT TO COUNSEL—IDENTIFICATION—PHOTO-
   GRAPHS—APPEAL AND ERROR—HARMLESS ERROR—MISCARRIAGE
   OF JUSTICE—STATUTES.

   A denial of a defendant's right to counsel at a photographic
   display is not covered by the statutory "miscarriage of justice"
   standard for determining harmless error (MCLA 769.26).

5. CRIMINAL LAW—RIGHT TO COUNSEL—IDENTIFICATION—PHOTO-
   GRAPHS—HARMLESS ERROR—REASONABLE DOUBT.

   A denial of a defendant's right to counsel at a photographic
   display is not harmless error unless the court is able to declare
   that it was harmless beyond a reasonable doubt.

6. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHS—RIGHT TO COUN-
   SEL—HARMLESS ERROR—REASONABLE DOUBT.

   Conducting three photographic identification proceedings in the
   absence of defendant's counsel was harmless error beyond a
   reasonable doubt where the proofs were so overwhelming that,
   even if there had been no identification testimony from the
   witnesses participating in the prior proceedings, all reasonable
   jurors would have found guilt beyond a reasonable doubt.

CONCURRENCE BY ELLIOTT, J.

7. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—IDENTIFICATION—PHO-
   TOGRAPHS—RIGHT TO COUNSEL.

   *The admission of the identification testimony of eyewitnesses who
   had previously identified the defendant at a pretrial photo-
   graphic display, after defendant's arrest, in which the defend-
   ant was not represented by counsel was proper where a physi-
   cal lineup was impossible, the photographic lineup was fairly
   presented, defense counsel did not move to suppress the in-
   court identification until the first day of trial although he had
   known of the photographic display for two months, no attorney
   had been appointed for the defendant before the time of the
   photographic display, and a post-trial evidentiary hearing es-
   tablished that the identifications at trial were independent of
   the photographic display.*

8. CRIMINAL LAW—APPEAL AND ERROR—MISCARRIAGE OF JUSTICE—
   CONSTITUTIONAL LAW—CONSTITUTIONAL RIGHTS.

   *A conviction should be upheld where an error was not a violation
   of a constitutional right and did not deprive the defendant of a
   substantial right or result in a miscarriage of justice.*

Appeal from Genesee, Thomas C. Yeotis, J. Submitted Division 2 June 12, 1974, at Detroit. (Docket No. 17775.) Decided September 11, 1974.

James E. Roberson was convicted of armed robbery and assault with intent to murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Department, and *F. Jack Belzer,* Assistant Prosecuting Attorney, for the people.

*Smith, Cassell, Mattice & Rodriguez,* for defendant.

Before: J. H. Gillis, P. J., and Allen and Elliott,* JJ.

J. H. Gillis, P. J. On March 28, 1973 defendant was found guilty by a jury of armed robbery, MCLA 750.529; MSA 28.797, and assault with intent to murder, MCLA 750.83; MSA 28.278. He was sentenced to 25 to 50 years in prison and appeals as of right.

Beecher's Ladies Apparel store in Genesee Township was the scene of a December 13, 1972 armed robbery. At trial the three persons in the store at the time—two sales clerks, Judy Rose and Myrtle Hougland, and Miss Rose's boyfriend, James Powell—identified defendant as the robber. Each of these eyewitnesses had previously identified defendant at a post-custodial, pretrial photographic display. Roberson argues that his armed robbery conviction must be reversed because he

---

* Circuit judge, sitting on the Court of Appeals by assignment.

was not represented by counsel at these displays.[1]
See *People v Franklin Anderson,* 389 Mich 155;
205 NW2d 461 (1973); *People v Jackson,* 391 Mich
323; 217 NW2d 22 (1974); *People v James Ander-
son,* 391 Mich 419; 216 NW2d 780 (1974). The
prosecution argues that, even if it was error to
conduct the photographic identification proceeding
in the absence of defendant's attorney, the error
was harmless.

I

"Harmless error" is one of the more frequently
utilized bases for appellate court affirmance of
criminal convictions. Unfortunately, there is a
considerable lack of understanding by the judi-
ciary as to what constitutes "harmless error".

First, it must be understood that presently there
are two separate standards in Michigan for deter-
mining what is harmless error, one for nonconsti-
tutional errors and another for Federal constitu-
tional errors. If the error is nonconstitutional, *i.e.,*
merely an error in the application of a rule of
evidence or procedure, we do not reverse unless
the error "deprived the defendant of substantial
rights or resulted in a miscarriage of justice".[2]
*People v Reed,* 17 Mich App 696, 698; 170 NW2d
303, 304 (1969); see MCLA 769.26; MSA 28.1096,[3]

---

[1] Defendant has raised no allegation of error with respect to his
conviction of assault with intent to murder.

[2] Many cases talk of prejudicial error. See, for example, *People v
Robinson,* 386 Mich 551; 194 NW2d 709 (1972); *People v Wahl,* 7 Mich
App 314; 151 NW2d 894 (1967). This term is usually used synony-
mously with reversible error and is not a meaningful standard for
determining harmless error.

[3] "No judgment or verdict shall be set aside or reversed or a new
trial be granted by any court of this state in any criminal case, on the
ground of misdirection of the jury, or the improper admission or
rejection of evidence, or for error as to any matter of pleading or
procedure, unless in the opinion of the court, after an examination of

GCR 1963, 529.1; *People v Ritholz,* 359 Mich 539;
103 NW2d 481 (1960); *People v Ogg,* 26 Mich App
372; 182 NW2d 570 (1970). However, if the error
alleged to be harmless is of constitutional magni-
tude, we must ask two questions. "First, is the
error so offensive to the maintenance of a sound
judicial process that it never can be regarded as
harmless?" *People v Wichman,* 15 Mich App 110,
116; 166 NW2d 298, 302 (1968).[4] Second, if not so
offensive, can the court "declare a belief that it
was harmless beyond a reasonable doubt". *Chap-
man v California,* 386 US 18, 24; 87 S Ct 824, 828;
17 L Ed 2d 705 711 (1967). We think it fair to say
that the standard for reviewing nonconstitutional
errors is less demanding than the standard for
reviewing constitutional errors, in the sense that
the "miscarriage of justice" test will tolerate more
serious errors. Is there a rational basis for the
constitutional-nonconstitutional dichotomy? We
think not.

Dissenting in *Fahy v Connecticut,* 375 US 85, 94;
84 S Ct 229, 234; 11 L Ed 2d 171, 177 (1963), Mr.
Justice Harlan said:

"It is obvious that there is no necessary connection
between the fact that evidence was unconstitutionally
seized and the degree of harm caused by its admission.
The question of harmless error turns not on the reasons
for inadmissibility but on the effect of the evidence in
the context of a particular case." See Saltzburg, *The
Harm of Harmless Error,* 59 Va L R 988, 1025 (1973).

the entire cause, it shall affirmatively appear that the error com-
plained of has resulted in a miscarriage of justice."

[4] Errors that have been held to be never harmless are: 1) errors
resulting from deliberate prosecution misconduct. *People v Robinson,*
386 Mich 551; 194 NW2d 709 (1972); and 2) denial of a defendant's
right of cross-examination. *People v Mobley,* 390 Mich 57; 210 NW2d
327 (1973); *People v Paduchoski,* 50 Mich App 434; 213 NW2d 602
(1973).

Erroneously admitted nonconstitutional evidence may often be more prejudicial than erroneously admitted constitutional evidence.

The alleged error here—denial of defendant's right to counsel at a photographic identification proceeding—is not error of constitutional magnitude. In *United States v Ash,* 413 US 300; 93 S Ct 2568; 37 L Ed 2d 619 (1973), the Supreme Court held that the right-to-counsel guarantee of the Sixth Amendment does not extend to photographic displays. Subsequently, in *People v Jackson,* 391 Mich 323, 338–339; 217 NW2d 22, 27–28 (1974), the Michigan Supreme Court ruled that:

"[B]oth before and after commencement of the judicial phase of a prosecution, a suspect is entitled to be represented by counsel at a corporeal identification or a photographic identification unless the circumstances justify the conduct of an identification procedure before the suspect can be given an opportunity to request and obtain counsel and that, except in exigent circumstances, photographs of a suspect known to be in custody or who can readily be produced for a lineup may not be displayed to witnesses. After due consideration of * * * *Ash* * * * we adhere to this view because we are of the opinion that generally the best evidence of whether an eyewitness can identify a suspect is his response at a fairly conducted lineup unaffected by an earlier showing of photographs of the suspect.

"Accordingly, *in the exercise of our constitutional power to establish rules of evidence applicable to judicial proceedings in Michigan courts* and to preserve best evidence eyewitness testimony from unnecessary alteration by unfair identification procedures, the principles developed in and following the announcement of *Wade,* as to corporeal identifications, and *Anderson,* as to photo showings, shall govern the receipt in evidence of identification testimony where the witness has viewed or seen photographs of the suspect without regard to when the judicial phase of the prosecution is commenced." (Emphasis supplied.)

The *Anderson* case referred to in, and affirmed by, *Jackson* is *People v Franklin Anderson, supra.* A pre-*Ash* decision, *People v Franklin Anderson* represents the conclusion of our Supreme Court, as expressed by Justice WILLIAMS, that the United States Constitution gives an accused a right to counsel at photographic displays.[5] Thus, in 1973 our photographic identification rule was of constitutional magnitude and now, in 1974, it is not. But the fact remains, the rule is the same. Obviously, *United States v Ash, supra,* has not made a 1974 violation of this rule per se any less serious than a 1973 violation. Equally obvious, the harmless error standard to be utilized in the review of these violations should not be automatically determined by United States Supreme Court decisions.

We think there should be one harmless error standard applicable to all errors in criminal cases, regardless of their classification. And of the two standards discussed herein, we think the *Wichman-Chapman* standard is the better. It seems to us that in its practical application, the "miscarriage of justice" standard permits appellate courts to "sweep under the carpet" errors which may well have played a significant role in the fact trier's decision to convict. The "miscarriage of

---

[5] Justice LEVIN, writing for the Court in *People v Jackson,* 391 Mich 323, 338; 217 NW2d 22, 27 (1974), said that *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973), represents "the conclusion of this Court, independent of any Federal Constitutional mandate". We agree that *Anderson* was not mandated by the Constitution, since there was no United States Supreme Court decision extending the Sixth Amendment to photographic displays. Nevertheless, Justice WILLIAMS relied primarily upon *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967). Moreover, by saying that "[b]ecause we find there was an independent basis" for the in-court identification, there is no need "to determine whether the victim's identification testimony was 'harmless' constitutional error", Justice WILLIAMS clearly indicates that he thought the rules he was enunciating were of constitutional dimension. *Franklin Anderson,* 389 Mich 190; 205 NW2d 477–478.

justice" standard sounds very much like a "shocks the judicial conscience" type standard. A criminal defendant on appeal should not have to shock our conscience in order to secure for himself those rights which the Legislature and courts of this state have determined that he should have. However, the "miscarriage of justice" standard is statutory. MCLA 769.26; MSA 28.1096.[6] If it is applicable to the facts of this case, we are bound to apply it.

"Miscarriage of justice" is applicable to "misdirection of the jury, improper admission or rejection of evidence", and errors in "pleading or procedure". MCLA 769.26; MSA 28.1096. Is the rule that a defendant has a right to counsel at a photographic identification proceeding the type of evidentiary or procedural rule contemplated by the legislature when they adopted "miscarriage of justice"? We do not think so. This rule is designed to preserve "eyewitness testimony from unnecessary alteration by unfair identification procedures". *Jackson, supra,* 391 Mich 338–339; 217 NW2d 27. Its violation is error with an inherent tendency to undermine the reliability and detract from the integrity of the guilt determination process. It seems to us that a conviction which is tainted with such a violation is highly suspect and should be reviewed by a standard more demanding than "miscarriage of justice". Accordingly, we hold that where the error is a denial of defendant's right to counsel at a photographic display, that error shall not be held harmless, unless the court is able to declare that it was "harmless beyond a reasonable doubt".[7]

---

[6] See fn 3.

[7] We do not think this error is "so offensive * * * that it can never be regarded as harmless". *People v Wichman,* 15 Mich App 110, 116; 166 NW2d 298, 302 (1968). See fn 4. It is not the result of deliberate

## II

Thus, our question becomes: Assuming it was error to conduct the three photographic identification proceedings in the absence of defendant's counsel,[8] was the error harmless beyond a reasonable doubt, *i.e.,* were the proofs, aside from the taint of the error, so overwhelming that all reasonable jurors would find guilt beyond a reasonable doubt?[9] We hold that if this was error, it was harmless.

---

prosecution misconduct. And it is different in nature from a denial of cross-examination. When a court does not permit a defendant to cross-examine a witness, we have no way of knowing what testimony would have been elicited from that witness. Thus, an unknown body of evidence is withheld from the jury. It is impossible for us to say what effect this evidence would have had on the jury had it not been withheld. Consequently, it is impossible for us to say that denial of a defendant's right of cross-examination is "harmless beyond a reasonable doubt". However, where the error is a denial of a defendant's right to counsel at a photographic display, the tainted identification evidence is presented to the jury. Therefore, since the result of this error is known to us, we can isolate it and determine if it is "harmless beyond a reasonable doubt".

[8] There are important questions raised in this appeal concerning the *Anderson-Jackson* rules and their application to this case. However, because of our disposition of this case we take no position on: (1) Whether exigent circumstances existed justifying the use of photographs? See *Anderson, supra,* 389 Mich 155, 186–187, fn 22; 205 NW2d 461, 475, fn 22. (2) Whether *Anderson* should be applied retroactively in Genesee County? See *Jackson, supra,* 391 Mich 340; 217 NW2d 28. (3) Whether an independent basis for the in-court identification can be established at a post-trial evidentiary hearing conducted by the trial judge? See *People v Young,* 21 Mich App 684; 176 NW2d 420 (1970); *Jackson, supra.*

[9] *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967), indicates that the court's inquiry into what is harmless beyond a reasonable doubt should focus on the effect of the tainted evidence on the jury. Quoting from its decision in *Fahy v Connecticut,* 375 US 85; 84 S Ct 229; 11 L Ed 2d 171 (1963), the Court said: "The question is whether there is a reasonable possibility that the *evidence complained of* might have contributed to the conviction". (Emphasis supplied.) *Chapman, supra,* 386 US 23; 87 S Ct 827; 17 L Ed 2d 710.

On the other hand, *Harrington v California,* 395 US 250; 89 S Ct 1726; 23 L Ed 2d 284 (1969), while purporting to follow *Chapman,* focused its inquiry on the untainted evidence, holding that constitutional error could be considered harmless if there was "overwhelming

Uncontroverted and untainted evidence indicates the following: Early in the evening of December 13, 1972, Deputy Sheriff Harry Kerlin was parked in an unmarked squad car in the vicinity of Beecher's Ladies Apparel and other stores. Deputy Kerlin was on surveillance assignment in regard to a number of recent holdups in the area. At approximately 6:45 p.m. Kerlin observed defendant[10] drive up and park his car on the street. Defendant got out of the vehicle, and flipped down his rear license plate. He was apparently trying to hold it down, but it kept coming back up. Defendant then walked out of Kerlin's view.

Miss Rose, one of the store clerks, testified that the robber came into the store and placed a woman's coat on layaway. She wrote up a layaway ticket, giving one-half the ticket to the robber and retaining the other half. The robber then started to leave the store. But he stopped, pulled a gun, took money from the cash register and fled. The three persons inside the store all testified that the robbery occurred between 6:45 and 7 p.m.

Deputy Kerlin testified that he became suspicious when, at about 6:55 p.m., he observed defendant run toward his car, get in and speed away. With Kerlin following in his unmarked car, defendant ran several stop signs and a red light, finally driving his automobile into a ditch. After Kerlin identified himself as a police officer, defendant fired two shots. An exchange of gunfire followed, defendant finally being wounded and captured.

Police searched Roberson and found $246 and a layaway card from Beecher's Ladies Apparel. Miss

untainted evidence to support the conviction". We think *Harrington* offers the better approach.

[10] Deputy Kerlin's identification testimony is untainted; he did not participate in any photographic identification proceedings.

Rose identified the layaway card as the one she had given the robber. The store owner, Mr. Rosenfelt, testified that he went to his store shortly after the robbery and computed that $246.25 had been stolen. In addition, Myrtle Hougland identified one of the $5 bills found on defendant as a bill that had been in the store's cash register. She testified that she recognized the bill because someone had colored Abraham Lincoln's shirt pink.

We think this evidence is so overwhelming that, even if there had been no identification testimony from the three robbery eyewitnesses, all reasonable jurors would have found guilt beyond a reasonable doubt. Defendant's convictions are affirmed.

ALLEN, J., concurred.

ELLIOTT, J. *(concurring).* I agree with Judge GILLIS that the conviction should be affirmed. For the reasons he states eloquently, I further agree that any error was harmless, by any test. However, in my opinion no error occurred.

After he first fired at a deputy, the defendant was shot twice and arrested, ending a chase that began at the store robbed. Because of his gunshot wounds he was in a hospital and later in a cast. A physical lineup was impossible. His wounds delayed his arraignment and a determination that counsel would be appointed.

A few days after the robbery, seven strikingly similar photographs were displayed separately to each eyewitness. The photographic "lineup" was fair and not the least suggestive either in the composition of the display or in the manner it was presented. Each witness decisively picked out the defendant's photograph.

Following local practice, defense counsel was given a copy of the summary of evidence prepared

by the police detective in charge. One reason for this is to give counsel an opportunity to present motions before the day of trial. By that written summary, defense counsel knew of the photographic display for more than two months before the trial. Defense counsel also knew that the court scheduled requested suppression hearings after the hours devoted to trials, so that trial time would not be lost.

On the day of trial, witnesses and jurors are present and waiting. Participants in other criminal trials may also be present and waiting. Motions to suppress evidence should be brought before that date. They may require considerable testimony. The court should have time for thought and research and to state his findings. If the motion is granted, and the suppressed evidence is crucial (as in a possession case), the case may be dismissed; the witnesses need not be subpoenaed; and another case can be tried. If suppression is erroneously ordered, the prosecution has a chance to appeal the ruling. Other cases, all entitled to a speedy resolution, cannot be disposed of by trial or plea if another case takes up the court's limited trial time.

When this trial was to begin at 8:30 a.m., defense counsel, for the first time, moved to suppress in-court identification of defendant by the eyewitnesses. He did not contend that a physical lineup should have been held. The basis of the motion was the absence of counsel at the photographic lineup, although no attorney had been appointed. By coincidence, the day of the trial was the same day on which the Michigan Supreme Court decided *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973).

The trial judge ruled that the motion to sup-

press was not timely and proceeded with the trial.
I think his ruling should be upheld.

It is desirable that the time for such motions be
clarified by rule or case decision. Federal Rule 12
of Criminal Procedure, to be effective August 1,
1975, provides that such motions (and other mo-
tions, requests, defenses and objections specified in
Rule 12) must be made before trial and are waived
if not raised by a time set by the court. It serves a
good purpose, as does proposed Rule 11(e)(5) con-
cerning the time for plea agreements. The uncer-
tainty of whether, on the day set for trial, the
defendant will go to trial, plead guilty, make
motions, waive a jury or claim that he (or his
lawyer) are incompetent creates delay and docket
difficulties.

In this case, the photographic lineup was not
mentioned at the trial. Defendant did not testify
and offered no evidence in his defense. He was
positively identified by the witnesses, including the
deputy—who did not view any photographs—who
had pursued him from the store and who defend-
ant tried to kill.

A motion for a new trial on the armed robbery
count (defendant was also convicted of assault with
intent to murder the deputy) was made after the
conviction when the *Franklin Anderson* case, *su-
pra,* was published. That motion prompted the
trial judge to conduct an evidentiary hearing. The
testimony of the eyewitnesses and the detective at
that hearing clearly and convincingly proved that
the trial identification was independent of the
photographic lineup and not in the least tainted
by it. The presence of counsel could not have made
the photographic lineup more fair.

I think the identification testimony was admissi-
ble. It would have been error to exclude it. More-

over, the motion to suppress the evidence came too late.

I do not think we must decide what standard of review should be applied when there has been a post-custody photographic showing without counsel. Any standard should take into account the good faith and fairness of the police procedure involved. This includes some consideration of the time period since new police procedures have been required by a court.

Any suppression rule must recognize that truth and accuracy depend upon the jury knowing all relevant, reliable evidence—the information that human logic and insight need to function. If no one asks the victims and witnesses whether defendant was the person whose conduct they observed and have described, jurors will surely wonder why. I have no confidence that suppression of such testimony will produce a more accurate verdict than searching examinations into perceptions before, during and after a crime that bear upon the reliability of an identification. The interest of a victim in the enforcement of laws that his government has enacted for his protection is not to be ignored. I would allow the victim and other eyewitnesses in this case to submit to the jury their identification of the person responsible.

A recent opinion speaks on these concepts in another context; *Michigan v Tucker,* 417 US 433, 446, 447, 450–451; 94 S Ct 2357, 2365, 2367; 41 L Ed 2d 182, 194, 196–197 (1974):

"Just as the law does not require that a defendant receive a perfect trial, only a fair one, it cannot realistically require that policemen investigating serious crimes make no errors whatsoever. The pressures of law enforcement and the vagaries of human nature

would make such an expectation unrealistic. Before we penalize police error, therefore, we must consider whether the sanction serves a valid and useful purpose. * * *

"The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force. * * *

"For, when balancing the interests involved, we must weigh the strong interest under any system of justice of making available to the trier of fact all concededly relevant and trustworthy evidence which either party seeks to adduce. In this particular case we also 'must consider society's interest in the effective prosecution of criminals * * * '. These interests may be outweighed by the need to provide an effective sanction to a constitutional right * * * but they must in any event be valued."

There is room for these and other practical considerations in the statutory "miscarriage of justice" test of harmless error. The "miscarriage of justice" test does not permit, as suggested, appellate courts to sweep errors "under the carpet", nor prevent them from acting unless their conscience is shocked. I disagree with the proposition advanced by Judge Gillis that every error in a trial should cause reversal unless it passes the *Wichman-Chapman* test. If the error was not a violation of a constitutional right and did not deprive the defendant of a substantial right or result in a miscarriage of justice, I am in favor of upholding the conviction.