PEOPLE v TOCCO

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—SCENE OF
   CRIME.

   Persons not at the scene of a crime at the time of its commission
   may be res gestae witnesses in extraordinary circumstances.

2. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—INDORSEMENT
   BY PROSECUTION—PURPOSES.

   The purposes of the rule requiring the prosecution to indorse all
   res gestae witnesses are to insure the disclosure of the whole of
   the res gestae, to protect the accused against the suppression of
   testimony favorable to him, and to give him the benefit of
   cross-examination.

3. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—SCENE OF
   CRIME—EXCULPATORY TESTIMONY—ENTIRE CRIMINAL TRANSAC-
   TION.

   A witness was not a res gestae witness where the crime occurred
   approximately an hour and a half after the witness abandoned
   the scene and where there was no suggestion that his testi-
   mony would tend to exculpate the defendant or was necessary
   to show some part of the entire transaction that would other-
   wise not have been shown.

4. CRIMINAL LAW—EVIDENCE—REBUTTAL TESTIMONY—ADMISSIBILITY—
   DISCRETION—APPEAL AND ERROR.

   The admissibility of rebuttal testimony which could have been
   offered by the prosecution during its case in chief rests within
   the sound discretion of the trial court; the decision of the trial
   court will not be disturbed unless a clear abuse of discretion is
   shown.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 29 Am Jur 2d, Evidence §§ 189, 638, 640.
[4, 5] 29 Am Jur 2d, Evidence §§ 250, 269.
[6, 7] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[8] 21 Am Jur 2d, Criminal Law §§ 477, 479.
[9] 21 Am Jur 2d, Criminal Law §§ 245, 253, 254.

5. CRIMINAL LAW—EVIDENCE—REBUTTAL TESTIMONY—ADMISSIBILITY—
   DISCRETION—CONTRADICTING TESTIMONY.

   Admission of the rebuttal testimony of a prosecution witness was
   not an abuse of discretion where the rebuttal testimony contra-
   dicted the testimony of defendant's alibi witness and tended to
   negate the defense of mistaken identity.

6. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—ISSUE OF SUGGES-
   TIVENESS—RAISING ISSUE BEFORE TRIAL.

   The question whether an out-of-court photographic identification
   was unduly suggestive is the type of question that defense
   counsel are expected and encouraged to raise before trial.

7. CRIMINAL LAW—SUPPRESSION—IN-COURT IDENTIFICATION—PHOTO-
   GRAPHIC IDENTIFICATION—UNDUE SUGGESTIVENESS.

   Failure to suppress a complainant's in-court identification which
   had been preceded by an unduly suggestive out-of-court photo-
   graphic show-up was proper where the complainant testified
   that his identification was based solely on his observations
   when the crime occurred and that he was not influenced in the
   slightest by the photographic show-up, several other witnesses
   positively identified the defendant, and it appears the jury
   verdict was not influenced by any tainted show-up or prema-
   ture in-court identification.

8. CRIMINAL LAW—ROBBERY—KIDNAPPING—JOINING COUNTS—SAME
   TRANSACTION.

   Permitting the prosecution to join counts of armed robbery and
   kidnapping is proper where both counts arise from the same
   transaction.

9. CRIMINAL LAW—SPEEDY TRIAL—REASON FOR DELAY—PREJUDICE.

   There is no denial of the right to a speedy trial by a delay of five
   months between arrest and trial where most of the delay is
   caused by the necessity for pretrial proceedings in defendant's
   behalf and no prejudice is evident.

Appeal from Oakland, Arthur E. Moore, J. Sub-
mitted Division 2 January 13, 1975, at Lansing.
(Docket No. 18543.) Decided April 7, 1975.

- Joseph M. Tocco was convicted of armed rob-
bery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Richard G. Bensinger,* Assistant Appellate Counsel, for the people.

*Skillman & Rundell,* for defendant.

Before: T. M. Burns, P. J., and D. E. Holbrook and M. J. Kelly, JJ.

M. J. Kelly, J. Defendant was charged with armed robbery, MCLA 750.529; MSA 28.797, and kidnapping, MCLA 750.349; MSA 28.581. He was convicted by a jury of armed robbery and acquitted of kidnapping. He was sentenced to a prison term of 25 to 40 years and appeals his conviction to this Court as of right.

Testimony showed that at approximately 10:30 a.m. on March 22, 1973, defendant and an accomplice confronted Kenneth Curto at the rear of the Balloon Bar in Southfield, Michigan. Mr. Curto, a co-owner of the bar, was told to get into a U-Haul van-type truck. This instruction by defendant was accompanied by the opening of his jacket and the patting of a pistol in his belt. Curto was able to clearly see the weapon which he described as an automatic. The accomplice took the wheel, defendant took the passenger seat, and the victim was placed between them with his knees in the gearshift area. They drove around the area and Curto was queried about fifteen thousand or twenty thousand dollars which the assailants apparently presupposed he had. Defendant demanded Curto's wallet, took the cash out of it (about $350) and handed the ·wallet back. After the victim admitted having an office safe in the bar, the van was driven back to the bar and parked. Curto and defendant's accomplice then entered the small office inside

where the safe was located. Defendant took a position outside the office in such a manner as to place himself between the bar proper and the door to the office.

While so positioned, defendant came in close proximity to two barmaids. One testified that he blocked her way but that she walked around him after getting a good look at him from a distance of one or two feet. The other testified to a ten-or twelve-minute observation of defendant during which time she not only passed him but entered the office by shoving him aside. She testified there was no doubt in her mind that defendant was the man in the bar.

After obtaining the money from the safe, defendant and his accomplice returned Mr. Curto to the van. The trio drove to a nearby apartment complex, where the assailants taped the victim's arms and legs together. He was left in the rear of the locked van after being told by defendant that his family could be hurt if he did anything. He was also told not to move for at least 30 minutes from the time he was abandoned.

Two agents from the Federal Bureau of Investigation, Edmond Diem and David Boner, testified during the prosecution's case in chief. Defendant was under surveillance for an unrelated matter on March 22, 1973. Through the early morning hours of that day the agents followed defendant. Eventually defendant went in the Balloon Bar. The agents were across the street at the time of the first confrontation with Curto. They saw the victim drive up to the bar, stop his car, walk back within a few feet of defendant and converse with defendant. They did not know what was taking place and did not intervene.

The thrust of the defense was a combination of

alibi and mistaken identity. It was claimed that defendant, Joseph Martin Tocco (Little Joe), had been confused with his cousin, Joseph James Tocco (Big Joe). There was testimony from which it could be inferred that the U-Haul, while under contact surveillance,[1] was parked on property occupied by Big Joe, his wife and family. The defense produced Big Joe's mother-in-law who identified a photograph of Big Joe which was admitted into evidence. She testified that the photograph accurately reflected her son-in-law's facial features. Three alibi witnesses countered the people's evidence in chief regarding defendant's whereabouts from 8 a.m. to about 11 a.m., by placing him in the downriver area many miles from the scene of the crime.

The prosecution presented Michael Leyden, another FBI agent, as a rebuttal witness. Mr. Leyden testified that he had defendant in his view from about 7:45 a.m. to 9:20 a.m. on the date in question. The van, with defendant in the passenger seat, was driven into the Balloon Bar parking lot. Mr. Leyden then left and did not see defendant again that day.

Defendant raises five issues on appeal:

(1) Did the trial court err in allowing the rebuttal testimony of Michael Leyden?

(2) Did the trial court err by allowing an in-court identification of defendant by the victim prior to hearing defendant's argument that the out-of-court photographic identification was unduly suggestive?

---

[1] In answer to a question by defense counsel about "constant surveillance" the witness, an FBI agent, answered as follows:

"A. No, that is not right. That word is not 'constant'. It is 'contact'.

"Q. Oh, contact, I am sorry. Would you make the distinction?

"A. Yes, constant would imply that someone was watching that residence and that U-Haul van for the entire period. Contact means that someone spot checks that residence occasionally."

(3) Were the in-court identifications of defendant tainted by the pretrial photographic identification procedure?

(4) Did the trial court err in denying defendant's motion for severance or, in the alternative, to require the prosecution to elect between counts for trial purposes?

(5) Was defendant denied his right to a speedy trial?

## I.

The issue is properly before us. At trial, the defense urged that it had been "sandbagged" and objected vigorously on the grounds that the agent was not truly a rebuttal witness and that he was an unindorsed res gestae witness. If in fact Mr. Leyden was a res gestae witness, we must reverse. *People v Sacharczyk,* 16 Mich App 710; 168 NW2d 639 (1969), *lv den,* 383 Mich 755 (1969).

Although the term "res gestae witness" most clearly embraces eyewitnesses to the corpus delicti of a crime, in extraordinary circumstances persons not at the scene of the crime at the time of its commission may be res gestae witnesses. *People v Harrison,* 44 Mich App 578, 591–592; 205 NW2d 900, 908–909 (1973). The purposes of the rule requiring the prosecution to indorse all res gestae witnesses are to insure the disclosure of the whole of the res gestae, to protect the accused against the suppression of testimony favorable to him, and to give him the benefit of cross-examination. *People v Raider,* 256 Mich 131, 135; 239 NW 387, 389 (1931), *People v Harrison, supra,* 44 Mich App at 588. With those purposes in mind the term "res gestae witness" may be broader than "eyewitness".

In the instant case, there is no suggestion that

Leyden's testimony would tend to exculpate defendant or that it was necessary to show some part of the entire transaction that would otherwise not be shown. The actual robbery occurred approximately an hour and a half after Leyden abandoned the scene. Under these circumstances, Mr. Leyden was not a res gestae witness, and defendant's contention must fail.

As to the second aspect of the issue, it is important to note the precise nature of the alibi testimony. It was claimed that defendant had been in a barbershop in Riverview shortly after 9 o'clock and at another barbershop in Southgate (not Southfield) between 9:30 and 10 o'clock. The visit to the first barber had something to do with an automobile transaction; the visit to the second barber several miles away was for the tonsorial service known as "a comb out". Both barbershops were many miles away from the scene of the crime in Southfield.

The testimony of agent Leyden was directed to two main points. First, the testimony of defendant's alibi witnesses was impeached by Leyden's testimony that he had defendant in his view that morning and followed him to the scene of the crime in Southfield where he left him at exactly 9:20 a.m. The agent's description of the activities of defendant on the morning in question varied drastically from the description given by the defense witnesses.

The second contribution that Leyden made to the prosecution's case was with regard to the photograph of Big Joe Tocco. Leyden testified that he had seen the defendant, (Little Joe), six times prior to March 22nd. On redirect, he was shown the picture of Big Joe:

"*Q.* I want to show you Defendant's Exhibit H, and I ask you if you recognize the person in Exhibit H?

"*A.* I have never seen him.

"*Q.* Is that the man you saw on March 22?

"*A.* No, sir."

Our standard of review is clear:

"As a general rule, the admissibility of rebuttal testimony, which could have been offered by the prosecution during its case in chief, rests within the sound discretion of the trial court; and we will not disturb the trial court's decision unless a clear abuse of that discretion has been shown." *People v Daleo,* 43 Mich App 386, 390; 204 NW2d 315, 317 (1972), *lv den,* 389 Mich 760 (1973); *People v Curry,* 49 Mich App 64, 66; 211 NW2d 254, 255–256 (1973).

The rebuttal testimony tended to contradict matters raised by defense witnesses. We find no abuse of the discretion vested in a trial judge.

## II.

The trial court's refusal to take up the question of out-of-court photographic identification at a prior evidentiary hearing is not understandable. The matter was brought up by defense counsel three times; on motion before trial, after jury selection, and by an objection to the in-court identification of defendant by the victim on direct examination. On each occasion the matter was brushed aside. Only during the cross-examination of the victim, Mr. Curto, and after the in-court identification, was a separate hearing conducted.

On numerous occasions, our Court has made it clear that defense counsel are to be expected and encouraged to raise issues such as this before trial. The reasons are spelled out in the concurring

opinion of Judge Elliott in *People v Roberson,* 55 Mich App 413, 424; 222 NW2d 761, 766 (1974):

"On the day of trial, witnesses and jurors are present and waiting. Participants in other criminal trials may also be present and waiting. Motions to suppress evidence should be brought before that date. They may require considerable testimony. The court should have time for thought and research and to state his findings. If the motion is granted, and the suppressed evidence is crucial (as in a possession case), the case may be dismissed; the witnesses need not be subpoenaed; and another case can be tried. If suppression is erroneously ordered, the prosecution has a chance to appeal the ruling. Other cases, all entitled to a speedy resolution, cannot be disposed of by trial or plea if another case takes up the court's limited trial time."

In addition, resolution of the issues raised may have an effect on the trial strategy of the lawyers. Add to that the diminished respect accorded our judicial system by witnesses and jurors who must sit idle while the evidentiary hearing is conducted, and it can be seen that resolution of constitutional issues in pretrial proceedings serves the interest of all concerned. The refusal to follow the procedures outlined in *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), and *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), cannot be condoned.

### III.

It does not necessarily follow that reversal for a new trial is required. At the conclusion of the evidentiary hearing, the trial judge ruled:

"Counsel, you can put this in before the jury if you

desire. This is your privilege. You do not have anything to move the Court to do at all. Identification is a matter you can go into very carefully. So this is your decision to make."

The court ruled by implication, an unsatisfactory device. At the hearing it was established that the pretrial photographic showing consisted of about five black-and-white "mug shots" taken from three angles, plus defendant's picture which was in color and was almost a full-length photo taken from the side. In view of the fact that the photographic display might reasonably be deemed "unduly suggestive", a determination that must be made by the trial judge who has an opportunity to compare the photographs, there is but one interpretation we can make of the trial judge's comments. It must have been the court's opinion that granting "the primary illegality, the evidence to which instant objection is made has been come at * * * by means sufficiently distinguishable to be purged of the primary taint", *United States v Wade, supra,* 388 US at 241; 87 S Ct at 1939; 18 L Ed 2d at 1165. Stated somewhat differently, the court must have concluded that, despite the shortcomings of the photographic display, "there was in the circumstances of this case little chance that the procedure utilized led to misidentification", *Simmons v United States,* 390 US 377, 385; 88 S Ct 967, 971; 19 L Ed 2d 1247, 1254 (1968).

The procedurally inept method of ruling notwithstanding, the facts support the implicit finding of the trial judge. During the day in question, the complainant had an extensive opportunity to view the facial features of his assailant. At the evidentiary hearing he testified that his identification was based solely on his observations when robbed

and that the identification was not influenced in the slightest by the photograph.

Even if we were to find that the trial judge erred in failing to render an explicit decision on the motion of defendant we would be constrained to hold that the error was harmless beyond a reasonable doubt. *Chapman v California,* 386 US 18, 24; 87 S Ct 824, 828; 17 L Ed 2d 705, 711 (1967), *People v Roberson,* 55 Mich App 413, 417; 222 NW2d 761, 762 (1974), *People v Wichman,* 15 Mich App 110, 116; 166 NW2d 298, 302 (1968).

Both waitresses testified that they carefully viewed defendant and his companion at close range and for substantial periods of time. Both were positive that defendant was the man they saw on March 22; the identification of neither had been influenced by any photographic display. Similarly, the FBI agents were certain of their identification of defendant. We have carefully examined the record and believe that the jury verdict was not influenced by any tainted show-up or premature in-court identification of defendant by Mr. Curto.

## IV.

As to what is necessary for conviction of kidnapping, *People v Adams,* 389 Mich 222, 234, 238; 205 NW2d 415, 420, 422–423 (1973), is instructive. Asportation must be beyond that "merely incidental to the commission of another underlying lesser crime". In the instant case, there was ample evidence of kidnapping, as that crime is defined in *People v Adams, supra.* The defendant was acquitted of kidnapping but claims prejudice in the denial of his motion for severance.

Inasmuch as both charges were properly brought, defendant's claim of error can best be viewed as an attack on the procedural device by which both were tried. It should be noted that where, as here, both crimes are part of the same transaction, multiple prosecutions violate the constitutional right to be free from double jeopardy,[2] as that right is construed in Michigan. *People v White,* 390 Mich 245; 212 NW2d 222 (1973). In short, if the people wished to prosecute for both crimes, as they were entitled to do, they were obligated to do so in a single trial.

The question then arises whether a motion for severance or election operates as a waiver of the constitutional protection, thus removing the absolute blockade of the Double Jeopardy Clause to multiple prosecutions. We assume *arguendo,* but, we hasten to add, do not decide, that *People v White, supra,* does not preclude separate 'trials where they are at the instance of a defendant who realizes that his protection against double jeopardy is thereby waived. Even so, the trial judge's decision to permit the prosecution to join the two counts was proper. See the dissenting opinion of Judge (now Justice) Levin in *People v Noth,* 33 Mich App 18, 33, fn 2; 189 NW2d 779, 785 (1971), *lv granted,* 385 Mich 779 (1971). See also *People v Andrus,* 331 Mich 535, 540–541; 50 NW2d 310, 313–314 (1951), and the cases cited therein.

## V.

The contention that defendant was denied a speedy trial is without merit. The delay between

---

[2] US Const, Am V; Const 1963, art 1, § 15.

arrest and trial was only five months.[3] Most of the delay was caused by the necessity for pretrial proceedings on defendant's behalf. That period is not to be considered improper delay. *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973). Although defendant requested a speedy trial in timely fashion, no prejudice is evident.

Affirmed.

---

[3] Compare *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972) (5-year delay); *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948) (18-month delay); *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972) (19-month delay); *People v Collins,* 388 Mich 680; 202 NW2d 769 (1972) (15-month delay); *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973) (27-month delay).