PEOPLE v METCALF

OPINION OF THE COURT

1. CRIMINAL LAW—IDENTIFICATIONS—IN-COURT IDENTIFICATIONS—
   PRIOR IMPROPER IDENTIFICATIONS—INDEPENDENT BASIS—RELE-
   VANT FACTORS.

   The relevant factors in reviewing a prosecutor's claim that there
   was an independent basis for an in-court identification of a
   criminal defendant which was not tainted by a prior improper
   identification are: (1) the witness's prior opportunity to observe
   the defendant during the crime; (2) the existence of any dis-
   crepancy between any pretrial description and defendant's
   actual appearance; (3) any identification of another person prior
   to the improper identification procedure; (4) failure to identify
   the defendant on a prior occasion; (5) any identification of the
   defendant at a proper identification procedure prior to the
   improper one; and (6) the lapse of time between the crime and
   the improper identification procedure.

2. CRIMINAL LAW—RIGHT TO COUNSEL—PHOTOGRAPHIC IDENTIFICA-
   TIONS—CORPOREAL IDENTIFICATIONS—EXCLUSIONARY RULE.

   The rule which would exclude direct evidence of an out-of-court
   identification where a defendant's right to counsel was denied
   also applies where the preference for corporeal identifications is
   ignored; the admission of such evidence is reversible error
   unless the court can find it harmless beyond a reasonable
   doubt.

3. CRIMINAL LAW—IDENTIFICATIONS—PHOTOGRAPHS—RULES—CUS-
   TODY—FOCUS.

   There is a right to counsel for photographic identifications and to

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 334, 341.
[2–4, 10, 11] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[5] 21 Am Jur 2d, Criminal Law § 218.
[6] 21 Am Jur 2d, Criminal Law § 312 *et seq.*
[7] 21 Am Jur 2d, Criminal Law §§ 334, 341.
[8] 67 Am Jur 2d, Robbery §§ 68, 69, 73.
[9] 21 Am Jur 2d, Criminal Law § 303.

a corporeal identification procedure absent exigent circumstances if the suspect is in custody and the investigation has focused on him; to require representation of counsel or a lineup for every incarcerated suspect whose mugshot is shown to a witness in a general investigation would be unduly burdensome.

4. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—RULES—POLICE KNOWLEDGE.

The custody requirement which activates the rules pertaining to photographic identifications requires police knowledge that an individual is in fact in custody; "reason to know" of the fact of a defendant's incarceration is probably sufficient.

5. CRIMINAL LAW—RIGHTS OF ACCUSED—POLICE—INSULATION FROM SAFEGUARDS—DELEGATION OF DUTIES—OTHER AGENCIES—FOCUS —REMAND.

An actively investigating police agency may not insulate itself from procedural safeguards intended to protect the rights of individuals by delegating ministerial tasks to other police agencies; therefore, where the record on appeal is unclear whether a state police robbery investigation had focused on an individual in their custody for another offense when they delivered his photograph with others to a local police agency for observation by a robbery victim, the proper remedy is to remand the case for an evidentiary hearing on the focus issue.

6. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—RIGHT TO COUNSEL—IN-CUSTODY ACCUSED—PRESERVING QUESTION—CASE PRECEDENT.

Failure of a defendant to raise the issue of the focus of police investigation at the time of a photographic showing at which the in-custody defendant was not represented by counsel at suppression hearings held after October 13, 1975, will bar the defendant from raising the issue on appeal.

7. CRIMINAL LAW—IDENTIFICATION—PRIOR CONFRONTATION—HAPPENSTANCE CONFRONTATION.

An in-court identification was not tainted by a prior improper one-on-one lineup where the prior confrontation was happenstance and resulted in the witness spontaneously identifying the defendant before anyone said anything to her; such confrontations do not bring into play the rules regulating intentional confrontations.

8. ROBBERY—ELEMENTS—SPECIFIC INTENT—INSTRUCTIONS TO JURY—
   PRESERVING QUESTION.

   A jury instruction on armed robbery which included the language
   of the armed robbery statute and further explained the ele-
   ments of the crime but which did not mention that the defend-
   ant must have had the specific intent to deprive the victim of
   his property did not constitute reversible error where it was
   not objected to at trial (MCLA 750.529).

9. CRIMINAL LAW—SENTENCING—PRE-SENTENCE REPORTS—ACCURACY
   —BURDEN OF CHALLENGING.

   A trial judge is encouraged to explore the general background of
   an individual convicted of a crime before passing sentence and
   where a presentence report is inaccurate the burden is on the
   defendant or his attorney to challenge the accuracy of the
   information.

DISSENT BY QUINN, P. J.

10. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATIONS—IN-CUSTODY AC-
    CUSED—PRESERVING QUESTION—UNNECESSARY REVIEW—OTHER
    EVIDENCE.

    *It is unnecessary to consider on appeal the issue of the focus of a
    police investigation at the time of a photographic identification
    of a defendant by an armed robbery victim when the Court of
    Appeals affirms the finding of the trial court that the in-court
    identification was on an independent basis.*

11. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATIONS—PROTECTION OF
    RIGHTS—POLICE—EXCLUSION—KNOWLEDGE—WITHHOLDING IN-
    FORMATION.

    *A police agency initiating an investigation should generally be
    responsible for the protection of a defendant's rights with
    respect to photographic identifications once they know he is in
    custody but the exclusion of photographic identification evi-
    dence or reversal of a conviction because of improper admission
    of photographic identification evidence should be limited to
    cases where the police agency with knowledge of defendant
    being in custody withholds that information from another
    agency displaying the photos for identification.*

Appeal from Hillsdale, Kenneth G. Prettie, J.
Submitted May 12, 1975, at Lansing. (Docket No.
20193.) Decided October 13, 1975.

Steven L. Metcalf was convicted of armed robbery. Defendant appeals by leave granted. Remanded for further hearings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Lawrence R. Hayes, Jr.,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, by *Aloysius J. Lynch,* Special Assistant Attorney General), for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: QUINN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

BRONSON, J. Defendant was found guilty by a jury of the charged offense of armed robbery, contrary to MCLA 750.529; MSA 28.797. He was sentenced to a prison term of from five to 20 years in prison, and appeals by leave granted.

On the night of March 4, 1973, a carry-out pizza restaurant in Litchfield, Michigan, called "The Station", was robbed of approximately $70. The only eyewitness to the robbery was Karen Smith, a 16-year-old high school student who worked part-time at the restaurant. At trial, Ms. Smith testified that she was preparing a pizza when a young man walked into the restaurant and inquired about the price of a bottle of pop. When he brought the bottle to the cash register, she rang up the sale. At that time, the man leaned over the counter, pulled a knife, and said "empty". Karen Smith got a bag from underneath the counter, and put the paper money in it. She then asked the man whether he wanted the change, and he stated that he didn't want either checks or change. The

robber then grabbed the bag and left the restaurant. Karen Smith called the owner of "The Station" and the police to report the robbery.

Three days after the robbery, Ed Curtis of the Litchfield Police Department visited Karen Smith and showed her photographs of 24 different subjects. Ms. Smith identified defendant from his photograph as the person who robbed the restaurant on the night in question. Officer Curtis testified later that he knew little about these photographs. On their own initiative, the Michigan State Police had dropped off these photographs at their Jonesville post, and they had been forwarded to the Litchfield police. Curtis knew only that this procedure was in connection with the investigation of a series of robberies by the state police.

After Karen Smith identified the defendant from the photographic display, Officer Curtis contacted the state police post in Jonesville to inform them that the witness had identified the defendant. At that time, Officer Curtis was informed that the defendant was already incarcerated in the county jail.

The next day Karen Smith went down to the district court to sign the complaint. After doing so, she observed the defendant come into the magistrate's office for arraignment on other charges. She said, "There he is", before anyone said anything to her. When defendant was returned one more time to that office to get his commitment papers, Ms. Smith stated that she was sure that defendant was the robber.

Karen Smith identified the defendant as the robber at both the preliminary examination and the trial. At trial, she also testified on direct examination to the fact that she had identified the defendant at the pretrial photographic display.

Of the many issues raised by defendant on appeal, the following claims merit discussion: (1) that defendant was denied his right to have counsel present at the photographic identification; (2) that the police were required to hold a corporeal lineup instead of a photographic display; (3) that the confrontation of the defendant by the complaining witness at the courthouse constituted an improper one-on-one lineup; (4) that the jury was never instructed as to the essential elements of armed robbery; and (5) that the trial judge improperly considered defendant's military record in passing sentence.

## I. *The Photographic Identification*

Defendant moved prior to trial to quash the photographic identification by Karen Smith, and any in-court identification by that witness, alleging that (1) the photographic display was unduly suggestive, and (2) the defendant was denied his right to have counsel present during that identification procedure.[1] At a pretrial hearing on that motion, Officer Curtis and Karen Smith were called to testify as to the photographic identification, while the defendant presented no witnesses. The trial judge denied the motion to quash the identification, based upon his ruling that Karen Smith's in-court identification had an "independent basis".

The rules pertaining to photographic identifications have been developed in recent years. The landmark case is *People v Franklin Anderson,* 389

[1] Defense counsel, during arguments on the motion, requested only that the in-court identification made by Karen Smith during the preliminary examination be quashed. However, counsel in his written motion speaks broadly of the taint upon "the identification of defendant". We hold therefore that the trial judge was sufficiently apprised of an objection to any in-court identification by Karen Smith.

Mich 155; 205 NW2d 461 (1973), where the Michigan Supreme Court held:

"1. Subject to certain exceptions, identification by photograph should not be used where the accused is in custody. (Footnote omitted.)

"2. Where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal identification procedures." *Anderson, supra,* pp 186–187.

Despite United States Supreme Court cases to the contrary, the Michigan Supreme Court held that the *Franklin Anderson* rules apply even prior to indictment, *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). In *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974), the Supreme Court rejected an attempt to extend the *Anderson* rules prior to custody if the investigation had "focused" on a particular individual.

Arguing from those cases, defendant contends that the *Anderson* rules were violated here because defendant was in custody when the photographic identification was held. He states that he was not allowed counsel at the identification, and that none of the "exigent circumstances" justifying a photographic identification in place of a lineup existed.

If only the in-court identification were involved here, we would sustain the trial judge's decision. When it appears from the record by clear and convincing evidence that the in-court identification was not tainted by a prior improper identification —that it had an "independent source"—no reversible error results, *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461

(1973). We hold that the trial judge correctly ruled that the prosecutor sustained his burden of proving an "independent basis" for the in-court identification.

The trial judge applied the factors found in *People v Hutton,* 21 Mich App 312; 175 NW2d 860 (1970), in order to review the prosecutor's "independent basis" claim. Those factors are as follows: (1) the witness's prior opportunity to observe the defendant during the crime; (2) the existence of any discrepancy between any pretrial description and defendant's actual appearance; (3) any identification of another person prior to the improper identification procedure; (4) failure to identify the defendant on a prior occasion; (5) any identification of the defendant at a proper identification procedure prior to the improper one; and (6) the lapse of time between the crime and the improper identification procedure. We agree that those factors are good ones to use to review this type of claim for admissibility of the in-court identification.

. Several of those factors pointed strongly toward an "independent basis". Karen Smith observed the defendant during the robbery at close quarters and in good light for several minutes. In addition, the photographic identification was held only three days after the robbery, preventing the photographs from being the predominant source of her in-court identification 2-1/2 months later.

The trial judge also found that none of the negative factors were present. That is, Karen Smith never identified a third party, nor did she fail to identify defendant on a prior occasion. The trial judge additionally determined that the witness's description immediately after the crime, while different in some respects, did not "materi-

ally" differ from defendant's actual appearance. When the lack of these negative factors is coupled with the strong factors discussed above, there is clear and convincing evidence of an "independent basis" for the in-court identification.[2] The trial judge was correct insofar as he held that the in-court identifications by Karen Smith were proper.

At trial, Karen Smith did more than identify the defendant, she testified that she had identified him at the pretrial photographic display. It is well-established that such direct evidence of the out-of-court identification is per se inadmissible where there was a denial of defendant's right to counsel when that identification was made, *Gilbert v California,* 388 US 263, 273; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), *People v Franklin Anderson, supra,* at 169.[3] We hold that the same *per se* exclusionary rule applies to the first *Franklin Anderson* rule, creating a preference for corporeal identifications, as well as to the second, relating to the right to counsel.[4] Since defendant was not given the oppor-

---

[2] The trial judge also stated that the fifth factor was satisfied because the defendant was identified from photographs by Karen Smith. That statement was clearly wrong. The fifth factor concerns identifications *other* than the one presently in question. If the requirement were otherwise, the improper identification could be used to bootstrap tainted in-court identifications into evidence. However, since the other factors were sufficient to establish an "independent basis", the trial judge's misapplication of this factor did not constitute reversible error.

[3] This per se exclusionary rule is subject to the harmless error rule, *Gilbert v California,* 388 US 263, 274; 87 S Ct 1951, 1957; 18 L Ed 2d 1178, 1187 (1967). The admission of the evidence is reversible error unless this Court can find it harmless beyond a reasonable doubt. The test to be used is whether there is overwhelming untainted evidence to support the conviction, *People v Roberson,* 55 Mich App 413; 222 NW2d 761 (1974). Since Karen Smith was the only eyewitness to this crime, we cannot say that there was other evidence overwhelming enough to make this error harmless. In this case, then, the rule becomes one of *per se* reversible error.

[4] It is not clear whether the *per se* exclusionary rule of *Gilbert* applies to pretrial identification procedures which are "impermissibly suggestive". *See,* this author's analysis of that question in *People v*

tunity to have counsel present when Karen Smith identified defendant from his photograph, and the prosecutor does not claim that exigent circumstances required that a lineup not be held, the key question becomes whether the *Franklin Anderson* rules apply here.

Defendant claims that the *Franklin Anderson* rules apply in all cases where defendant is in custody. Yet the history of those rules given above is important, for it puts in perspective the *Lee* Court's rejection of the "focus" test. In *Lee,* the Court held that custody was *necessary,* even if the investigation had "focused" on a particular criminal defendant, to bring into play the *Franklin Anderson* rules. However, the Supreme Court has never decided if custody is *sufficient* in all cases, and we think that the "focus" test is still a viable one to use in that area.[5]

We hold that a criminal defendant has a right to counsel for photographic identifications and a preference for corporeal identifications only if he is in custody *and* the investigation has "focused" on him.[6] During the general investigation by the po-

*Rivera,* 61 Mich App 427; 232 NW2d 727 (1975), fn 3. We do not have to reach that issue, for defendant does not pursue the "suggestiveness" claim on appeal. Further, the photographic display here was not shown to be unduly suggestive. The only testimony at the hearing, by Officer Curtis and Karen Smith, indicated that there was no prompting or suggestion at the time the photographs were shown. In addition, the number of photographs, 24, was large. Finally, the suspects in the photographs all looked remarkably similar to the defendant.

[5] The *Lee* Court was careful to use language which would indicate that the "focus" test was being rejected only in the context of the defendant's arguments there. The specific language was as follows, *Lee, supra,* p 625:

"The *Franklin Anderson* rule attaches with custody. * * * [Citations omitted.] Defense counsel's argument that the right to counsel attaches once 'an investigation has focused' on a particular suspect is an inaccurate one, *insofar as it is supposed to refer to 'pre-custody' investigations. The cases to which the defendant refers are in-custody not pre-custody cases."* (Emphasis added.)

[6] The "focus" test derives from *Escobedo v Illinois,* 378 US 478, 490;

lice soon after a crime is committed, witnesses are often shown many photographs. The source of those photographs is often files of mug shots taken of persons who have previously committed similar crimes. Therefore, it is always likely that a high percentage of these suspects are in jail at the present time for committing other offenses.

The police cannot reasonably be expected to insure that each person whose picture is shown, and who happens to be in custody at that time, is represented by counsel or brought in for a lineup. Yet if the police want to be sure that the identification will be proper as to the one suspect who is identified, they will have to do so. It is exactly that kind of burden that led the *Lee* Court to refuse to extend the *Franklin Anderson* rules back to the "focus" stage:

"It is not feasible to require appointment of counsel in cases of pre-custody photographic showups where there is no detention of the defendant since under such a rule each photograph arguably depicts a suspect and therefore each person whose photograph appears in the photographic display, or perhaps even the 'mug book' would require the representation of counsel. That would be impossible and absurd." *Lee, supra,* p 625.

It is for these reasons that we hold that the rights to counsel and to lineup absent exigent circumstances attach only upon "focus" and custody.

In several cases prior to *People v Lee, supra,* the Supreme Court held that the right to counsel had attached because the suspect was in custody, without mentioning the "focus" factor. We do not view these cases as contrary to our holding here, for in

84 S Ct 1758, 1765; 12 L Ed 2d 977, 986 (1964), where it was held that the right to counsel attaches "where, as here, the investigation is no longer a general inquiry into an unsolved crime, but has begun to focus on a particular suspect".

each it was clear that the investigation had indeed "focused" on a particular suspect. In *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), photographic and lineup identifications were held pertaining to a certain armed robbery. Jackson was in jail for attempting to use a stolen credit card. Yet there was no doubt that the police investigation of the armed robbery had "focused" on Jackson, for the credit card was the one taken in that robbery. In *People v James Anderson,* 391 Mich 419; 216 NW2d 780 (1974), the Court pointed out in the first paragraph of the opinion:

> "Five of the witnesses who identified him at the trial had previously identified him at photo showings. The showings were held while Anderson was in custody in connection with another offense, and, it would appear, under suspicion of having committed this offense. He was not represented by counsel at the showings." *James Anderson, supra,* at 421.

In both cases, then, the elements of both custody and "focus" were present.

Defendant was incarcerated in the county jail on an unrelated charge when the photographs were displayed to Karen Smith in that county. It would seem unnecessary to state that defendant was in "custody" as that word is commonly defined. However, "custody" as used to invoke the *Franklin Anderson* rules is a term of art, and requires police knowledge that an individual is in fact in custody, *People v Jackson, supra, People v James Anderson,* 391 Mich 419; 216 NW2d 780 (1974), *People v Beasley,* 55 Mich App 583; 223 NW2d 77 (1974). The "custody" requirement is probably met also if the police have "reason to know" of the fact of defendant's incarceration, but we need not reach that issue here.

In summary, we must find that two require-
ments are met here before we can hold that the
*Franklin Anderson* rules apply. First, the investi-
gation by the police must have "focused" on this
particular defendant at the time of the photo-
graphic display. Secondly, the police must have
known that defendant was in jail at that time.

It is crucial to determine to which police agency
(the state police or the Litchfield police) we should
look in applying those requirements. The answer
is clear—the state police must be answerable for
any investigation they may have started in mo-
tion. We cannot allow the actively investigating
police agency to insulate itself from procedural
safeguards intended to protect the rights of indi-
viduals by delegating ministerial tasks to other
police agencies. The rule we have formulated to-
day would be a nullity if we held otherwise. One
police agency which has narrowed its inquiry to a
single person known to be in custody could avoid
the rule's requirements by passing that person's
photograph along with others to a different police
agency. We cannot allow that to happen.

It is clear from the evidence produced at the
hearing that the state police knew that defendant
was in custody. However, we are unable to deter-
mine from the record whether the state police
investigation had "focused" on the defendant. No
state policemen were called to testify, and Officer
Curtis had no knowledge of the purpose of the
investigation. The trial judge did not rule on this
claim because he felt that his finding of an "inde-
pendant basis" cured any earlier error. We feel
that the proper remedy is for this Court to remand
the case for an evidentiary hearing on the ques-
tion of whether the state police investigation here
had "focused" on defendant Metcalf.

We are confident that a remand is the proper remedy here, for this case is the first to directly hold that the "focus" test applies to the *Franklin Anderson* rules. Defense counsel cannot be held responsible for failing to correctly predict the direction of future opinions. However, we feel that the remand remedy has been overused by our appellate courts to resurrect errors which the defendant has neglected to raise below. That practice has resulted in overburdened trial courts, which are busy enough trying issues raised before them. Therefore, for suppression hearings held after the release of this opinion, failure on the part of the defendant to raise the "focus" issue below will bar raising it on appeal.

## II. *The Courthouse Confrontation*

Defendant was observed and identified by Karen Smith after she signed the complaint, but before she testified at trial. We find the circumstances of that meeting to be similar to those in *People v Hampton,* 52 Mich App 71; 216 NW2d 441 (1974). There two witnesses for the prosecution were present at the courthouse during jury selection. The defendant was observed by both, and one of them spontaneously identified him. The *Hampton* Court held that such happenstance confrontations do not bring into play the *Wade-Gilbert-Stovall*[7] line of cases. Applying that rule here, we hold that the trial judge properly denied the motion to quash the in-court identification on this basis.

## III. *The Jury Instructions*

The defendant now contends, for the first time,

---

[7] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 1199 (1967).

that the trial judge committed reversible error by failing to mention the term "specific intent to deprive the owner of his property" in his charge to the jury regarding the offense of armed robbery. However, in his instructions, the trial judge read the language of the armed robbery statute, and further explained the elements of the crime as follows:

"Now there are certain elements of the crime of armed robbery with which you should be concerned. I might say are concerned. The elements of the offense with which we are concerned here this morning are the following:

"Number 1. An assault, as I defined it to you, by the defendant upon the complainant.

"Second, a felonious taking of any property which may be the subject of larceny from his person—the complainant—or in his presence.

"And third, that the defendant was armed with a weapon described in the statute. In other words, a dangerous weapon."

That unobjected-to instruction is almost identical to the one upheld in *People v Fry,* 55 Mich App 18; 222 NW2d 14 (1974), and its use did not constitute reversible error.

## IV. *The Sentence*

The defendant contends that his sentence should be vacated because the trial judge considered his undesirable discharge from the military, and also several "AWOL" citations during the periods of military service. The comments by the trial judge at sentencing put that claim in perspective:

*"The Court:* The pre-sentence investigation report, as

I said earlier, I have considered in great detail. I note you are just past 20 years of age.

"*Defendant Metcalf:* Yes, sir.

"*The Court:* You are a product of a broken home. Your parents have been divorced. The report indicates to me that you put in little effort when you were in school, and you quit school as soon as you attained age 16. The report also indicates you entered the military service and were discharged with less than an honorable discharge. But there were periods when you were absent without leave. You have little or no work experience; you have little or no education to train yourself for useful citizenship in the future.

"You have been in trouble with the law on prior occasions, and you now stand convicted by a jury in this court on a very serious offense that could bring to you a sentence of up to life imprisonment, which you apparently are fully familiar with because you mention that fact in your communication to this court."

As a general rule, the trial judge should be encouraged to explore the general background of each individual convicted of a crime before passing sentence. Our Supreme Court has endorsed that view in *People v Lee,* 391 Mich 618, 639; 218 NW2d 655 (1974):

"We do not believe it would be a wise policy to restrict the sentencing judge to the information admissible in open court alone. The question of sentencing is properly a matter for the exercise of judicial discretion, and an informed exercise of that discretion requires an individualized factual basis, such as is provided by the presentence report. Without knowledge of a convicted defendant's past life, employment record, criminal record, psychiatric history, if any, and 'mental and moral propensities', *Williams v New York,* 337 US 241, 245, it would be difficult for the sentencing judge to free himself in his determination of sentence from the nature of the offense charged and the caliber of the defense at trial.

"The presentence report not only aids the sentencing court in determining punishment, but in bringing relevant information regarding the character and antecedents of the defendant to the attention of the sentencing judge is of possible advantage to the defendant as well, since it shifts the emphasis of the sentencing proceedings from the specific nature of the crime committed to the individual convicted of the crime."

Background information contained in a presentence report can be improper if it is inaccurate. However, the defendant or his attorney must challenge the accuracy of the information in the presentence report at the sentencing hearing, *People v Lee, supra, People v Nelson Johnson,* 58 Mich App 473; 228 NW2d 429 (1975). Defendant here did not object to the references to his military record, nor does he now assail the accuracy of the report. The trial judge quite properly reviewed defendant's background before passing sentence, and we find no reversible error here.

## V. *Conclusion*

Pursuant to GCR 1963, 820.1(5), we retain jurisdiction of this case and remand to the trial court for a hearing to determine whether the state police investigation had "focused" on the defendant when the photographs were displayed to the witness. If the trial judge determines that it had "focused", a new trial shall be ordered.

If the trial judge reaches the contrary conclusion, he shall within 10 days after the end of the hearing state his findings. The judge's findings and a transcript of the hearing shall be forwarded to this Court. Defendant may file a supplemental brief within 15 days after the trial court reaches its decision, and the people may file their brief

within 15 days after the receipt of defendant's brief.

N. J. Kaufman, J., concurred.

Quinn, P. J. *(dissenting in part).* The majority opinion sustains the finding of the trial judge that the in-court identification of defendant by witness Karen Smith was on an independent basis. That opinion holds that *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973), applied to this record, indicate no reversible error occurred by admitting the testimony of witness Smith regarding her prior photographic identification of defendant. This should end our inquiry and we should affirm the trial court's denial of the motion to suppress the identification testimony of witness Smith.

However, the majority opinion proceeds through four more pages to discuss "had the investigation focused on defendant" at the time of the photographic identification by Karen Smith. There being no proof on this issue, since it was not raised at trial, the majority remands for an evidentiary hearing on this point. The majority opinion further holds that if the trial judge finds that the investigation had focused on defendant at the time of the photographic identification by Karen Smith, the trial judge is to order a new trial. This last holding is based on what I consider faulty reasoning which lacks record support.

The reasoning is that the state police started the investigation and they should be responsible for the protection of defendant's rights with respect to photographic identification once they knew he was in custody. I can accept this reasoning as a general

statement of policy. I cannot apply it to this record which discloses that the state police were conducting a general investigation of a series of robberies and which fails to disclose that the state police knew defendant was in custody at the time they delivered the photographs to Officer Curtis. If this reasoning is to be accepted, it should be limited to situations where the police agency with knowledge of defendant being in custody withholds that information from the officer displaying the photos for identification.

Except for the conclusion of the majority opinion, I concur in the balance of it and vote to affirm.