*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

UNPUBLISHED
January 22, 2019

v

OLAJUWON ONIK CARTER,

    Defendant-Appellant.

No. 326442
Wayne Circuit Court
LC No. 14-007691-02-FC

## ON REMAND

Before: RIORDAN, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Following our decision in *People v Carter*, unpublished per curiam opinion of the Court of Appeals, issued January 19, 2017 (Docket No. 326442) (*Carter I*), defendant sought leave to appeal to the Michigan Supreme Court. The Supreme Court then held defendant's application for leave to appeal in abeyance[1] pending its decision in *People v Randolph*, 502 Mich 1; 917 NW2d 249 (2018). Eventually, in *Randolph*, the Supreme Court held that "even when a defendant cannot succeed on a claim being reviewed for plain error, courts may not simply conclude, without independent consideration, that a defendant is unable to succeed on an ineffective-assistance claim relating to the same underlying issue." The Supreme Court then issued an order vacating "part II.C" of *Carter I*, remanded it to this Court for "reconsideration in light of *Randolph*," and denied defendant leave to appeal in all other respects. *People v Carter*, ___ Mich ___; 919 NW2d 269 (2018) (*Carter II*). We now affirm defendants' convictions.

---

[1] *People v Carter*, ___ Mich ___; 901 NW2d 97 (2017).

I. FACTUAL BACKGROUND

Defendants, Olajuwon Onik Carter and Irell Dwayne Friday, were tried jointly before one jury. The jury convicted Carter and Friday of carjacking, in violation of MCL 750.529a, armed robbery, in violation of MCL 750.529, first-degree home invasion, in violation of MCL 750.110a(2), and possession of a firearm during the commission of a felony ("felony-firearm"), in violation of MCL 750.227b. [2]

The convictions arise from an August 14, 2014 attempted carjacking, armed robbery, and home invasion at the home of Danny and Olie Kauthar in Detroit, Michigan. That afternoon, Danny entered his 2013 Ford Flex in order to go to the store. Before he could back out of the driveway, a white or cream-colored car pulled in behind the Flex, blocking it from leaving. A man, whom Danny later identified as defendant Friday, then approached the driver's side of the Flex carrying a gun. Another man, who also was carrying a gun, approached the passenger's side of the vehicle. He pointed the gun at the Flex and made an "up and down motion," as if he was indicating that Danny should get out. Danny exited the car, and Friday instructed Danny to hand over his keys. After taking the keys, Friday removed $340 from Danny's pocket. Friday then entered the car and attempted to start the vehicle, even though the car already was running. After fumbling with the controller, Friday exited the vehicle and moved toward the house while demanding to know which of Danny's keys opened the side door. Friday then broke a window with the handle of his gun to enter the house, where Olie and the couple's great-grandsons were located. Olie testified that Friday entered the house, pointed a gun at her, and instructed her to lie on the ground.

Meanwhile, Danny was still standing at the car when an unidentified co-perpetrator pointed a gun at his back and ordered him into the house. Ignoring this command, Danny ran toward a third person, who was standing near the driver's side door of the perpetrators' car, and who also was pointing a gun at Danny. At trial, Danny identified that third person as defendant Carter. As he ran, Danny yelled for help, hoping to attract the attention of his neighbors across the street, who were talking on their porch. Friday exited the home, and the three men then got in their car and drove away.

Soon after arriving at the scene, the police discovered Friday's cell phone in the Kauthars' yard. Danny watched as a police officer looked through the pictures on the phone, and Danny then spontaneously identified Carter and Friday in some of the pictures as two of the perpetrators.

During trial, Danny's teenaged great-grandson, DR, also identified Carter as one of those involved. But DR acknowledged "that he was not as confident about that" in-court identification as he had been when identifying Friday at a pretrial lineup. On cross-examination, DR admitted

---

[2] This case was originally consolidated with *People v Friday* (Docket No. 326467), which involved codefendant Dwayne Friday. On remand, this Court deconsolidated the two matters. *People v Carter*, unpublished order of the Court of Appeals, entered December 11, 2018 (Docket No. 326442).

that he thought that he had confused defendants Carter and Friday in his testimony on direct examination, further admitting that "he only saw one" of the perpetrators "clearly."

On appeal in this Court, defendant Carter raised numerous claims of unpreserved error, several of which he asserted both as a direct claim of plain error and, in the alternative, as a claim of ineffective assistance of trial counsel. *Carter I*, unpub op at 3-10. Seeking to further substantiate his claims of ineffective assistance, he filed a motion seeking remand for another *Ginther* hearing, which this Court denied.[3] Carter raised both direct claims of plain error and related claims of ineffective assistance regarding the admission of Danny's and DR's in-court identifications of him, counsel's failure to object to those in-court identifications, and counsel's failure to request a *Wade*[4] hearing. *Id*. at 5-8. Carter argued that Danny's and DR's in-court identifications should not have been allowed at trial because Danny's identification was tainted by a previous photographic identification procedure that was unduly suggestive, and DR's identification was suggestive and unreliable because Carter was sitting in the courtroom at the defense table when DR first saw him.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. APPLICABLE LAW AND STANDARD OF REVIEW

In *Randolph*, our Supreme Court wrote:

> This case requires us to consider whether a defendant's failure to satisfy the plain-error test in connection with a legal mistake by the trial court necessarily precludes the defendant from establishing the ineffective assistance of his trial counsel relating to that same mistake. Because these standards of review have separate legal elements that focus on different facts, we hold that a failure to satisfy the plain-error test will not, without more, foreclose a defendant's claim of ineffective assistance of trial counsel. This is true even when the subject of each claim is the same. Therefore, even when a defendant cannot succeed on a claim being reviewed for plain error, courts may not simply conclude, without independent consideration, that a defendant is unable to succeed on an ineffective-assistance claim relating to the same underlying issue.
>
> * * *
>
> It is the trial court's unobjected-to error that is the subject of plain-error review. By contrast, the "ultimate determination" of an ineffective-assistance claim is not the propriety of the trial court's actions with regard to an alleged error, but whether defendant has suffered a genuine deprivation of his right to effective assistance of counsel. . . . There will no doubt be occasions when both standards

---

[3] *People v Carter*, unpublished order of the Court of Appeals, entered October 11, 2018 (Docket No. 326442).

[4] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

are relevant; trial counsel's deficient performance will often result in a trial court error, but the claims associated with each type of error have their own elements and require different analyses. In evaluating a trial court's error the appellate court is making one determination, and in evaluating trial counsel's deficient performance, the determination is different.

\* \* \*

Counsel may decide, for strategic reasons, not to object to an obvious error. If counsel's strategy is reasonable, then his or her performance was not deficient.

Conversely, an error's lack of obviousness does not, without more, necessarily preclude an ineffective-assistance claim relating to the same issue. Simply because an error was unclear does not mean that counsel could let it pass without objection. Indeed, an ineffective-assistance claim might allege deficient performance that caused the error to be unclear. For example, an examination of defense counsel's performance might reveal that he or she deficiently failed to develop the record or pursue a line of questioning that would have made an error obvious. In such a case, it would be circular to reject the ineffective-assistance claim on the grounds that the error was not clear under the plain error standard. Trial counsel's own deficient performance—e.g., his or her failure to develop the record making the error clear—would make it impossible for the defendant to have that unconstitutional performance evaluated.

Each standard does require a showing of prejudice: *Carines*'s[5] third prong and *Strickland*'s[6] second. But even here, a finding that a defendant failed to satisfy the prejudice prong when complaining about an error by the court will not necessarily mean that the defendant is unable to prevail on an ineffective-assistance claim relating to the same underlying issue. In fact, the record on which the claims are assessed will typically be different. An appellate court need not look beyond the trial court record when reviewing a trial court's mistake for plain error . . . .

By contrast, the errors underlying ineffective-assistance claims often are not apparent from the trial record but instead require additional evidentiary development. This is because ineffective-assistance claims center on deficiencies in the defense counsel's decision-making, which will not always reveal themselves in the official record. . . . For these reasons, in Michigan, a defendant can seek an evidentiary hearing in the trial court on defense counsel's performance and then bring an ineffective-assistance claim on direct appeal with the benefit of the augmented hearing record.

---

[5] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

[6] *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Because facts outside the trial record could be critical to an ineffective-assistance claim, a court presented with such a claim coupled with a related plain-error argument cannot simply plug in the plain-error prejudice analysis for the ineffective-assistance prejudice analysis. As with the remaining elements of each claim, a court must evaluate the record evidence relevant to each independent legal claim.

Finally, *Carines*'s fourth prong—focusing on manifest injustice—lacks any analog in the *Strickland* test. In short, the elements of an ineffective-assistance claim evaluate counsel's performance, and while sometimes a trial court's error relating to the same underlying issue will have facts in common with that Sixth Amendment claim, the legal framework for each operates independently. . . . There is no easy shortcut when reviewing separate appellate claims of the court's and counsel's errors, even where those errors have as their focus the same underlying issue. [*Randolph*, 502 Mich at 5, 10-15 (quotation marks, citations, brackets, and footnotes omitted).]

The Supreme Court noted that its holding in *Randolph* has no substantive effect on "the fundamental nature of the analyses for plain error and ineffective assistance." *Id*. at 16. Thus, the pre-*Randolph* case law concerning ineffective assistance remains in force except, perhaps, to the extent that any prior decisions might have conflated the *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) plain-error review standard with the *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984) test.

"Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. . . ." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *Trakhtenberg*, 493 Mich at 56.

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland*, 466 US at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy [.]" *Id.* at 242-243. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). In other words, the reviewing court must consider the range of potential reasons that counsel might have had for acting as he or she did. *Id*.

## B. ANALYSIS

The portion of *Carter I* that was vacated by our Supreme Court addressed Carter's arguments that his trial counsel had performed ineffectively by "failing to request a *Wade* hearing, failing to file a motion to suppress Danny's and DR's in-court identifications, and otherwise failing to object to the admission of their identifications." *Carter I*, unpub op at 8.

We previously held that "[c]onsidering the totality of the circumstances, Danny's on-scene identifications of defendants on the recovered cell phone were not based on an impermissibly suggestive procedure leading to a substantial likelihood of misidentification" and that, in any event, the on-scene identification was "not planned or prearranged by the police." In other words, although this Court did not expressly state as much, the trial court's admission of Danny's subsequent in-court identification did not constitute error at all, let alone plain error. See *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993) ("In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification."); *People v Metcalf*, 65 Mich App 37, 50; 236 NW2d 573 (1975) (noting that "happenstance confrontations"—i.e., those not arranged by the government—do not implicate exclusion under *Wade* and its progeny). Therefore, any objection or request for a *Wade* hearing with regard to Danny's identification would have been futile, and counsel did not perform ineffectively by failing to make such an objection or request. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004) ("Counsel is not ineffective for failing to make a futile objection.").

Likewise, although *Carter I* failed to explicitly state that the trial court did not err by permitting DR's in-court identification of defendant Carter, that conclusion also was implicit in this Court's discussion of the issue. See *Carter I*, unpub op at 7-8. Carter does not argue that DR's in-court identification was tainted by an unduly suggestive pretrial procedure. On the contrary, he admits that DR first identified him at trial and it has been long settled that "[t]he need to establish an independent basis for an in-court identification only arises where the pretrial identification is tainted by improper procedure or unduly suggestive comments." See, e.g., *People v Laidlaw*, 169 Mich App 84, 92; 425 NW2d 738 (1988); accord *Kurylczyk*, 443 Mich at 302; *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995); *People v Syakovich*, 182

Mich App 85, 89; 452 NW2d 211 (1989) ("[T]here is nothing on the record to suggest that the showup procedures used were unduly suggestive. Absent such a showing, no independent basis for the identification need be established.").

Similarly, and as this Court recognized in *Carter I*, unpub op at 6, in *Perry v New Hampshire*, 565 US 228, 232-233, 245; 132 S Ct 716; 181 L Ed 2d 694 (2012) the United States Supreme Court has held:

> We have not extended pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement officers. Petitioner requests that we do so because of the grave risk that mistaken identification will yield a miscarriage of justice. Our decisions, however, turn on the presence of state action and aim to deter police from rigging identification procedures, for example, at a lineup, showup, or photograph array. When no improper law enforcement activity is involved, . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

> \* \* \*

> The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness. [Footnote omitted.]

In this case, because defendant Carter has identified no unduly suggestive pretrial procedure that allegedly tainted DR's in-court identification, there was no need for the prosecution to demonstrate an independent basis for admissibility of that in-court identification. See *Kurylczyk*, 443 Mich at 302. As the United States Supreme Court has not announced a different or expanded rule regarding this federal constitutional issue, see *Perry*, 565 US at 232-233, 245, we are bound by the Michigan Supreme Court's holdings in *Kurylczyk* regarding the demands of due process. See *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004) (noting that whereas all "state courts are bound by the decisions of the United States Supreme Court construing federal law," the decisions of lower federal courts "are not binding on state courts"); *People v Wilson*, 500 Mich 521, 525; 902 NW2d 378 (2017) (observing that all lower courts in this state "remain bound by" a decision of the Michigan Supreme Court "unless and until th[at] Court overrules it").

Hence, the introduction of DR's in-court identification testimony was not erroneous, and any objection to it or request for a *Wade* hearing regarding it would have been futile. As a result, Carter's claim of ineffective assistance concerning DR's in-court identification also fails as counsel cannot be deemed ineffective for failing to make a futile objection. See *Thomas*, 260 Mich App at 457.

Moreover, Carter has presented no record evidence sufficient to rebut the strong presumption that his trial counsel employed effective strategy with regard to DR's in-court identification. Both this Court and our Supreme Court have "recognized that 'there are times when it is better not to object and draw attention to an improper comment.' " *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008), quoting *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). See also *Unger*, 278 Mich App at 253 ("Declining to raise objections can often be consistent with sound trial strategy."). In this instance, a reasonably competent attorney might have feared that an objection to DR's in-court identification on due process grounds would have been overruled, thereby underscoring the testimony's importance in the minds of the jurors. Instead of risking an overruled objection, it was reasonable, under the circumstances, for counsel to impeach DR's in-court identification testimony by "rais[ing] the fact that DR did not identify Carter previously and later confused defendants' roles." See *Carter I*, unpub op at 8.

Finally, for that same reason—*i.e.*, the fact that trial counsel impeached DR's in-court identification testimony—Carter has failed to demonstrate a reasonable probability of a different outcome but for counsel's allegedly deficient performance. Clearly, identity was a crucial issue in this case. But DR was not the only eyewitness who identified defendant. Even assuming, arguendo, that counsel should have objected and that such an objection would have resulted in the exclusion of DR's in-court identification, the jury nevertheless would have heard Danny's in-court identification. Thus, Carter has not shown a reasonable probability that the introduction of one instance of identification testimony, standing alone, would have affected the outcome below. See *Strickland*, 466 US at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

## III. CONCLUSION

We affirm defendant Carter's convictions.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto