*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAYSHAWN SMITH,

Defendant-Appellant.

UNPUBLISHED
September 21, 2023

No. 361992
Macomb Circuit Court
LC No. 2021-001591-FH

Before: SHAPIRO, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant, Jayshawn Smith, appeals as of right his jury trial conviction of unarmed robbery, MCL 750.530. Smith was sentenced as a fourth-offense habitual offender, MCL 769.12, to 60 to 240 months' imprisonment, with credit for one day served. We affirm because there are no errors warranting reversal.

## I. BASIC FACTS

On May 23, 2021, Justen Harris got off a bus and purchased some items from a nearby gas station before walking to another bus stop across the street. Shortly thereafter, a man that Harris identified as Smith approached the bus stop, carrying a bottle of liquor. While Harris and Smith were waiting at the bus stop, one of Harris's friends approached and asked Smith if he could have some of the liquor. Smith declined. He then struck Harris in the face and head with the liquor bottle. Harris retreated to the nearby gas station and asked the clerk to call the police. The clerk did not do so.

Smith followed Harris inside and continued his attack, throwing Harris to the ground and repeatedly kicking and hitting him. Smith took Harris's phone and wallet from his pockets, ripping a large hole in Harris's jeans in the process, and left the gas station. After the attack, Harris went across the street and approached police officers who were in the area. Harris recounted his attack to the officers and asked them to call an ambulance. As Harris was speaking with the officers, Smith returned, heading toward the bus stop. Harris spontaneously identified Smith as the individual who attacked him. The officers questioned Smith, and he was eventually detained.

At the time, Smith was wearing white tennis shoes, dark blue jeans, a plain white tee shirt, and an orange and blue baseball cap with the word "Detroit" written across the front and a large sticker on the rim. He also had a white towel around his neck. One of the officers went to the gas station and was able to watch video surveillance of the attack on Harris. The individual in the video was wearing clothing identical to Smith's, including white tennis shoes, dark blue jeans, a plain white tee shirt, a white towel around his neck, and an orange and blue baseball cap with "Detroit" written on the front. The officer recovered still-images from the video.

A felony warrant and complaint were issued against Smith for unarmed robbery. Initially, Smith waived his right to a preliminary examination and was bound over to the circuit court on the charge. However, after Smith retained a new lawyer, the circuit court granted his motion seeking to remand his case to the district court for a preliminary examination. During the preliminary examination, Harris described the attack. When asked about the identity of the person who attacked him, Harris identified Smith, but he also expressed uncertainty as to whether Smith was his attacker. Smith was bound over to the circuit court for trial on one charge of unarmed robbery.

Smith's first trial resulted in a mistrial. However, during that trial, he identified Smith as his attacker.

Before Smith's second trial, his lawyer argued Harris's in-court identification during the first trial was improper because there was an impermissibly suggestive pretrial identification procedure involving the prosecutor showing Harris the still-photographs of the video surveillance before trial. The lawyer requested an evidentiary hearing to determine whether the prosecutor engaged in an unduly suggestive pretrial identification procedure. During the evidentiary hearing, Harris affirmed that, during the first trial he identified Smith as his attacker despite being unable to do so with certainty during the preliminary examination. When asked what changed between the preliminary examination and trial, Harris stated: "The photos I seen [sic] brought my memory back. Because being that I haven't seen him, except for that one day, you know." Harris explained the photographs he was shown by the prosecutor were from the surveillance video. According to Harris, the prosecutor never told him to identify Smith, lie on the stand, or otherwise attempt to influence his identification of Smith. The photographs simply "jogged" Harris's memory. Based upon Harris's testimony and the parties' arguments, the court found the in-court identification was not tainted by a suggestive pretrial identification because there was no evidence showing the identification procedure was unduly suggestive.

Thereafter, during the second trial, Harris recounted his attack, again identifying Smith as the perpetrator. Harris stated during the attack Smith repeatedly hit and kicked him in the head and face, resulting in Harris feeling "dizzy," "discombobulated," and "lightheaded." On cross-examination, Harris acknowledged he was unable to definitively identify Smith as the attacker during the preliminary examination. However, after being shown photographs of the surveillance video by the prosecutor, Harris stated that he was certain Smith assaulted him. In addition to Harris's testimony, a police officer idenitified Smith as the individual he observed and spoke with at the scene of the crime. The officer added that Smith was wearing clothing similar to that worn by the attacker depicted in the surveillance video. Finally, another officer identified Smith as the individual he detained at the scene.

## II. IN-COURT IDENTIFICATION

### A. STANDARD OF REVIEW

Smith contends he is entitled to a new trial because the circuit court's failure to suppress Harris's suggestive, unnecessary, and unreliable in-court identification deprived him of his right to a fair trial. "The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. Issues of law relevant to the admissibility of identification evidence are constitutional matters that this Court reviews de novo. *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020).

### B. ANALYSIS

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "Due process protects criminal defendants against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." *Sammons*, 505 Mich at 41 (quotation marks and citation omitted). "Exclusion of evidence of an identification is required when (1) the identification procedure was suggestive, (2) the suggestive nature of the procedure was unnecessary, and (3) the identification was unreliable." *Id*. "In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). A suggestive identification procedure can arise when a witness is called by the police and is told the police have arrested the right person, when a witness is shown only one person, or when a witness is shown a group of individuals and the defendant is uniquely singled out in some way, leading the witness to presume that he or she is the perpetrator. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998).

In this case, there was no improper pretrial identification because Harris: (1) without prompting, identified Smith as his attacker to police officers at the scene; and (2) did identify Smith during the preliminary examination. In *People v Metcalf*, 65 Mich App 37, 50; 236 NW2d 573 (1975),[1] this Court upheld the trial court's ruling not to quash an in-court identification because of the victim's spontaneous pretrial identification of the defendant. Here, shortly after the attack, Harris spontaneously and independently identified Smith as his attacker to the police officers located nearby. Based upon Harris's on-scene identification of Smith, police officers were able to question Smith and take him into custody. Further, during the preliminary examination, when asked about the identity of the person who attacked him, Harris identified Smith, but stated, in relevant part: "I'm not sure if that was the same person because it's been so long ago but his— what's the word I'm looking for—his presentation is the same as the guy that had did it." On

---

[1] Although cases decided before 1990 are not binding on this Court, they may be considered for their persuasive value. See MCR 7.215(J)(1).

cross-examination, Harris indicated he was not sure Smith was the same person who assaulted him.

On appeal, Smith mischaracterizes Harris's testimony, claiming Harris was *unable* to identify Smith before trial. However, Harris clearly made two pretrial identifications of Smith, although the identification at the preliminary examination was made without complete certainty. Because Harris independently identified Smith as his attacker before trial, there is no improper pretrial identification.

Next, while showing a witness a photographic lineup consisting of only one photograph, or a lineup where one person is singled out in some way, is impermissibly suggestive, *Gray*, 457 Mich at 111, "[g]enerally, the use of such surveillance [videos or] photographs to identify a subject is not impermissibly suggestive, since such films provide a memory-refreshing device, showing the man who actually committed the robbery as opposed to the picture of some possible suspect in the police files." *Kurylczyk*, 443 Mich at 309-310 (quotation marks and citation omitted). In this case, Smith complains that the procedure used by the prosecutor was impermissibly suggestive because the prosecutor emphasized his certainty that they had the "right man" when showing the photographs of the assault. Smith notes that, at the preliminary examination, the prosecutor had argued that the person depicted in the photographs was Smith. He also points to Harris's statement that he did not think that anyone told him that the man who assaulted him would be in court "the first time." And that he was "not sure" if someone had told him that the person depicted in the photograph would be in court. Yet, Harris testified that the prosecutor did not tell him to identify Smith as his assailant, show him clear photographs of Smith's face, ask him to lie on the witness stand, or attempt in any way to influence his testimony.

Based upon Harris's statements, the court found:

> We don't have a situation in which the prosecutor indicates to the witness, you will see the defendant. We don't have an instance in which the defendant's photograph, whether it's a booking card or otherwise, is presented to this witness and there's an inquiry as to whether this is the individual that had attacked him or is consistent with the on-scene res gestae photographs.

Given the record, the court's findings are not clearly erroneous. *Harris*, 261 Mich App at 51. Rather, the fact that Harris's certainty level changed after his memory was "jogged" by the photographs was a matter suited for cross-examination and for the defense's closing argument. The defense did, in fact, impeach the identification by pointing out the weaknesses in Harris's various identifications of Smith as his assailant.

In sum, because there was no unduly suggestive pretrial identification procedure, the circuit court did not err by admitting Harris's in-court identification of Smith.

## III. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

In his Standard 4 brief, Smith argues his trial lawyer provided ineffective assistance because she failed to object to the assessment of points for offense variable (OV) 3 and OV 19. Because no evidentiary hearing was held on Smith's ineffective-assistance claim, our review is limited to errors apparent on the record. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). A trial court's assessment of points for a sentencing guidelines variable is reviewed for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

### B. ANALYSIS

To establish a claim of ineffective assistance, Smith must show that his lawyer's performance fell "below an objective standard of reasonableness under prevailing professional norms" and that there is "a reasonable probability" that but for that error "the outcome of the proceedings would have been different." See *People v Sabin*, 242 Mich App 656, 659; 620 NW2d 19 (2000). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001) (quotation marks and citation omitted). The factual predicate for Smith's claim is that OV 3 and OV 19 were improperly scored.

OV 3 addresses physical injury to the victim. MCL 777.33. The court is required to score OV 3 at ten points if the victim suffered a "[b]odily injury requiring medical treatment." MCL 777.33(1)(d). Harris testified that Smith's assault made him feel "dizzy," "discombobulated, " and "lightheaded." He was taken by ambulance to the hospital to be treated for his injuries. At the hospital he was on IVs, had a neck brace, and his eyes were "real puffed up and one was real red." This evidence establishes Harris's injuries necessitated medical treatment, thus, the trial court did not err by assessing 10 points for OV 3.

The court also did not err by scoring OV 19 at 10 points. A court must score 10 points under OV 19 if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). In *People v Barbee*, 470 Mich 283, 285; 681 NW2d 348 (2004), the defendant pleaded guilty to operating a motor vehicle while intoxicated. The trial court assessed 10 points on OV 19 for interference with the administration of justice because the defendant gave a false name to the police officer who initially stopped his car. *Id.* Our Supreme Court affirmed, reasoning that investigating crime "is critical to the administration of justice" and the defendant impeded that process by giving a false name to the police. *Id.* at 288. Here, the record reflects that Smith gave a false name to the police when he was initially questioned. Accordingly, the court did not err by assessing 10 points for OV 19.

Because any objection to the scoring of OV 3 and OV 19 would have been futile, Smith cannot prevail on his claim of ineffective assistance. See *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021) ("Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel.").

## IV. HABITUAL OFFENDER NOTICE

In his Standard 4 brief, Smith lastly argues that he is entitled to resentencing because the prosecution failed to provide proper notice that he was subject to a habitual-offender enhancement under MCL 769.13. Specifically, he complains that, although the prosecutor *filed* the fourth-offense habitual offender notice, he failed to *serve* the notice as required by MCL 769.13. The record clearly shows, however, that the fourth-offense habitual offender notice was first served on Smith or his lawyer in July 2021, and was again served on either Smith or his lawyer in November 2021. This is expressly permitted by MCL 769.13, which allows for the habitual-offender notice to be served on a defendant or his lawyer. MCL 769.13(2). Additionally, the prosecutor filed and served the habitual-offender notice within 21 days after Smith was bound over from the preliminary examination, as required by MCL 769.13(1). Because there is no evidence to support Smith's argument the habitual-offender notice was not timely or properly served in conformance with MCL 769.13, Smith is not entitled to relief.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Thomas C. Cameron